# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## GILLY HALL v. COMMONWEALTH OF VIRGINIA, AT THE RELATION OF THE TOWN OF SOUTH BOSTON.

### January 17, 1924.

### Absent, Burks, J.

1. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Intoxicating Liquors.*—In a prosecution for unlawfully storing ardent spirits for sale, the action of the trial court in admitting as evidence against the accused incriminating articles obtained under an illegal and invalid search warrant was not error.

2. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Self-Incrimination.*—The admissibility of evidence is not affected by the illegality of the means by which it has been obtained, unless it appear that the defendant has been compelled himself to give or produce it, as where a confession obtained by duress is offered in evidence. And where evidence is acquired by an illegal search and seizure it cannot be said that the defendant has been himself compelled to give or produce it.

3. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Officer Acting without Authority.*—A police officer, when acting without a warrant, or under a void warrant, acts without authority or color ot authority from the State, and ceases to be its agent and he alone is responsible for his illegal acts. The court will decline to impose an indirect penalty on the Commonwealth, and prejudice its right to enforce its penal laws, by refusing to admit the evidence produced by him. Not being a representative of the State, but a trespasser, the use of the evidence by the State cannot be said to confirm his acts and make them its own.

4. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Violation of Constitutional Right.*—While the constitutional guaranty that citizens shall be protected against illegal searches and seizures should be rigidly enforced, yet the violation of this right is complete when an illegal search is made and goods taken into possession, and the subsequent use of the articles taken as evidence is no part of such violation.

5. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Officer Acting without Authority.*—In the admission of

the testimony illegally obtained, the court in no way condones the offense of the officer, nor relieves him from proper punishment, but refuses to allow the defendant to escape just punishment for his violation of the law because the officer is also guilty of its violation. The defendant can protect the sanctity of his home, without denying the State the right to use pertinent evidence, by applying remedies which the law provides.

6. EVIDENCE—*Searches and Seizures—Admissibility of Evidence Illegally Obtained—Officer Acting without Authority.*—The Virginia search and seizure act of 1920 was manifestly passed to protect and enforce the rights of citizens guaranteed to them by article 10 of the Virginia Bill of Rights. Section 4 of that act provides that an officer searching any house, otherwise than by virtue of and under a search warrant, shall be guilty of a misdemeanor, and further shall be liable to any person aggrieved thereby for damages. Had the legislature deemed further penalties necessary, it would doubtless have prescribed them. But the courts cannot inflict additional penalties, and one accused of crime cannot be heard to contend that property seized under an illegal search warrant cannot be used as evidence against him.

7. INTOXICATING LIQUORS—*Forfeiture—Forfeiture of Ardent Spirits and Containers—Admissibility of Evidence Illegally Obtained.*—As section 22 of the Virginia prohibition law provides for the forfeiture of ardent spirits and containers used in violation of the act, whiskey and containers found in the defendant's dwelling and used in illicitly storing for sale ardent spirits were forfeited to the Commonwealth, and were not the property of the defendant at the time they were seized by the officers searching the premises under an illegal warrant, the right to them having already vested in the Commonwealth; and the court should keep the articles in its custody for such disposition as evidence or otherwise as to it may seem proper.

8. CONSTITUTIONAL LAW—*United States Constitution—Amendments IV and V*—Amendments IV and V to the Federal Constitution do not govern the several States, nor the courts thereof.

9. CONSTITUTIONAL LAW—*United States Constitution—Amendments IV and V—Decisions of Supreme Court of the United States.*—In construing the Virginia Bill of Rights and the Virginia search and seizure law, the Supreme Court of Appeals is not bound by the decisions of the United States Supreme Court construing the fourth and fifth amendments to the Federal Constitution.

10. INTOXICATING LIQUORS—*Evidence—Incriminating Document—Case at Bar.*—In the instant case, a prosecution for illegally storing liquors for sale, when the house of defendant was searched an incriminating paper, apparently a memorandum of liquors sold, was found in a room occupied by defendant's daughter and son-in-law. Defendant exercised control over the entire building, and carried the key to the closet in the room in which the paper was found. She had the

opportunity to know, and the circumstances showed that she must have known, what was going on in the house.

*Held:* That the paper was properly admitted as an incriminating circumstance to be considered by the jury along with the other evidence in the case.

11. INTOXICATING LIQUORS—*Prosecution for Storing for Sale—Evidence Sufficient to Support Verdict of Guilty.*—In the instant case defendant was convicted of storing ardent spirits for sale. Upon a search of the premises some whiskey was found and also empty containers, a siphon and glasses, all smelling strongly of whiskey. There was also found upon the floor a memorandum apparently of liquors sold. The reputation of the defendant as a violator of the prohibition law was bad.

*Held:* That a verdict of guilty was not contrary to the evidence.

Error to a judgment of the Circuit Court of Halifax county.

*Affirmed.*

The opinion states the case.

*William Leigh, Jr.,* and *M. B. Booker,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, Leon M. Bazile, Second Assistant Attorney-General,* and *J. D. Easley,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

The plaintiff in error, hereafter called defendant, complains of a judgment entered on the verdict of a jury rendered September 27, 1922, convicting her of unlawfully storing ardent spirits for sale, in violation of the prohibition ordinance of the town of South Boston, and fixing her punishment at thirty days in jail and a fine of $100.00.

The uncontroverted facts are these:

Gilly Hall, a widow, owned, occupied and controlled

her own dwelling house, situate within one mile of the corporate limits of the town of South Boston, in Halifax county, Virginia.    On August 12, 1922, upon the affidavit of J. T. Chaney, a policeman of Halifax county, James B. Wilborn, mayor of South Boston, issued a search warrant authorizing and requiring policeman Chaney to search Gilly Hall's dwelling and premises for ardent spirits.    Not conforming to the requirements of the Virginia search and seizure law, the warrant was illegal and void.

On the same day, Chaney, acting under the search warrant, searched the dwelling house of Gilly Hall and found in her pantry a half gallon fruit jar of corn whiskey; another half gallon fruit jar containing about two gills of corn whiskey; three empty half gallon fruit jars smelling strongly of whiskey; a small drinking glass, and a red rubber tube commonly called a siphon, both of which had the odor of whiskey.    On the floor of the west room upstairs there was also found a sheet of paper, part of a letter dated March 24, 1922, from Winston-Salem, North Carolina.    The letter begins: "Dear Brother."    The signature of the writer does not appear on the paper, but on the reverse side is written in a different handwriting the names "Mrs. Amanda Betts, South Boston, Va." and "A. P. Betts," and the following entries, in pencil:

| | |
|---|---|
| "½ gallon | $3.00 |
| "quart | 2.00 |
| "pint | 1.00 |
| "½ pint | .80 |
| "3 25c drinks | .75 |
| "2 25c drinks | .50 |
| | $7.75 |
| "1 pint | 1.00 |

"PERCIE TUCK."

The room in which the paper was found was regularly occupied by A. P. Betts and his wife, Amanda Betts, the daughter of Gilly Hall. Gilly Hall had in her possession a key with which, at the request of the officers, she unlocked the door to the closet in the room occupied by Betts and his wife. Gilly Hall's reputation for violating the prohibition law was bad.

Upon conviction, the mayor of South Boston sentenced her to jail for thirty days and to pay a fine of $100.00. Upon appeal to the circuit court, the judgment complained of was entered.

[1] The first assignment of error challenges the action of the court in admitting as evidence against the accused the incriminating articles obtained under the illegal and invalid search warrant.

The question here raised is one of first impression in this court. In other jurisdictions the authorities are in sharp and irreconcilable conflict. The contest here is waged around article 10 of the Virginia Bill of Rights, the Virginia search and seizure act of 1920, and articles IV and V of the amendments to the Constitution of the United States.

Article 10 of the Virginia Bill of Rights reads:

"That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted."

The Virginia search and seizure law, Acts of 1920, page 516, will be hereafter referred to somewhat in detail.

Amendment IV to the Constitution of the United States provides as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall

issue but upon probable cause, supported by oath,. or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Amendment V to the Constitution of the United. States provides, among other things, as follows:

"No person * * * * shall be compelled in any crim- inal case to be a witness against himself."

[2] The admissibility of evidence is not affected by the illegality of the means by which it has been obtained,. unless it appear that the defendant has been compelled. himself to give or produce it, as where a confession. obtained by duress is offered in evidence. And where evidence is acquired by an illegal search and seizure it cannot be said that the defendant has been himself compelled to give or produce it.

Where the evidence produced is competent and. pertinent to the issue, the court will not stop the trial. of a case to investigate the means by which it was. procured. Such a course would involve the trial of an outside issue, either collateral or independent, and. tend to confuse the issues and create unnecessary delay in the trial of the principal case. See authorities here- after cited herein. It would mean that the court. must pause in the trial of a criminal case to decide property rights between wrong-doers. This the court will not do, especially where the property involved is. contraband and forfeited to the Commonwealth, and. not lawfully in the possession of the party complaining. The policy of the law in such cases is to refuse relief and leave the parties where it finds them.

[3] A police officer, when acting without a warrant, or under a void warrant, acts without authority or color of authority from the State, and ceases to be its agent and. he alone is responsible for his illegal acts. The court will decline to impose an indirect penalty on the Com- monwealth and prejudice its right to enforce its penal.

laws, by refusing to admit the evidence produced by him.. Not being a representative of the State, but a trespass- er, the use of the evidence by the State cannot be said to confirm his acts and make them its own.

[4] We concur with the courts of all jurisdictions that the constitutional guaranty that the citizens shall be- protected against illegal searches and seizures should. be rigidly enforced.   But the violation of this right is. complete when the search is made and the goods taken into possession, and the subsequent use of the articles. as evidence is no part of such violation.

[5] In the admission of the testimony illegally ob- tained, the court in no way condones the offense of the of- ficer, nor relieves him from proper punishment, but re- fuses to allow the defendant to escape just punishment for his violation of the law because the officer is also guilty of its violation.   In so holding, we do the defendant no injustice.   She can protect the sanctity of her home, without denying the State the right to use pertinent. evidence, by applying remedies which the law provides.

[6] The Virginia search and seizure act of 1920 (Acts. 1920, c. 345) was manifestly passed to protect and en- force the rights of the citizens guaranteed to them by article 10 of the Virginia Bill of Rights.   Section 4 of the act provides that "any officer or other persons. searching any house, place, etc., otherwise than by virtue of and under a search warrant (provided for in the act) shall be guilty of a misdemeanor, and be fined not. less than fifty dollars nor more than five hundred dollars. or be confined in jail not less than one month nor more than six months, or both, in the discretion of the justice, court or jury trying the same.   Any officer or person violating the provisions of this section shall be liable. to any person aggrieved thereby in both compensatory and punitive damages."   Had the legislature deemed further penalties necessary for the protection of the

citizens against illegal searches and seizures, it would doubtless have prescribed them. Having failed to do so, the duty does not rest upon the courts to inflict additional penalties, and one accused of crime in this jurisdiction cannot be heard to contend that property seized under an illegal search warrant cannot be used as evidence against him.

The view we have expressed as to the admissibility of evidence secured by illegal means is supported by the overwhelming weight of authority.

In England, in the case of *Stockfleth* v. *De Taset*, 4 Camp. 11, the court said: "What is proved to have been written or signed by any of the defendants, I must admit as evidence against them, without considering how it was obtained;" and in the case of *Caddy* v. *Barlow*, 17 E. C. L. 252, 1 Man. & Ry. 275-277, involving a malicious prosecution, it was held that a copy of the indictment was receivable as evidence, though not procured according to law, "without inquiry of the mode by which he became possessed of it."

In Canada, in the case of *R. V. Doyle*, 12 Ont. 350, liquors obtained by unlawful search and seizure were held to be properly admissible as evidence.

Among the cases in the State courts reaching conclusions in harmony with our own are the following:

*Commonwealth* v. *Dana*, 2 Metc. (Mass.) 329, 337; *Commonwealth* v. *Wilkins*, 243 Mass. 356, 138 N. E. 13; *People* v. *Mayen*, 188 Cal. 237, 205 Pac. 437, 24 A. L. R. 1383; *Shields* v. *State*, 104 Ala. 35, 16 So. 85, 53 Am. St. Rep. 17; *Williams* v. *State*, 100 Ga. 519, 28 S. E. 624, 39 L. R. A. 269; *State* v. *Griswold*, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227; *Gindrat* v. *People*, 138 Ill. 103, 27 N. E. 1085; *State* v. *Flynn*, 36 N. H. 64; *State* v. *Pomeroy*, 130 Mo. 489, 32 S. W. 1002; *Starch-*

*man* v. *State*, 62 Ark. 538, 36 S. W. 940; *State* v. *Turner*, 82 Kan. 787, 109 Pac. 654, 32 L. R. A. (N. S.) 772, 136 Am. St. Rep. 129; *People* v. *Adams*, 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St Rep. 675; *People* v. *Spagnoli*, 58 Cal. App. 154, 208 Pac. 185; *City of Sioux Falls* v. *Walser*, 45 S. D. 417, 187 N. W. 821; *City of Shreveport* v. *Marx*, 148 La. 31, 86 So. 602; *Prescott* v. *State* (S. C.), 117 S. E. 637.

The general rule is stated by Mr. Greenleaf, 1 Greenleaf on Evidence, section 254, as follows:  " * * * * though papers and other subjects of evidence may have been *illegally taken* from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue.  The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

In 8 R. C. L. 196, we find this:  "While it is true that the search of a defendant without legal justification is a trespass and an indictable misdemeanor, there is no principle or theory upon which the State may be deprived of the right to employ the evidence of a criminal offense thus obtained.  The law appoints the remedy for the redress of the wrong, but the exclusion of the evidence criminating the defendant is not within the scope of the remedy, or the measure of redress."    Citing *Shields* v. *State*, 104 Ala. 35, 16 So. 85, 53 Am. St. Rep. 17; *State* v. *Turner*, 82 Kan. 787, 109 Pac. 654, 136 Am. St. Rep. 129 and note, 32 L. R. A. (N. S.) 772; *Commonwealth* v. *Tucker*, 189 Mass. 457, 76 N. E. 127, 7 L. R. A. (N. S.) 1056; *People* v. *Adams*, 176 N. Y. 351, 68 N. E. 636, 98 Am. St. Rep. 675, 63 L. R. A. 406; *Cohn* v. *State*, 120 Tenn. 61, 109 S. W. 1149, 15 Ann. Cas. 1201, and note, 17 L. R. A. (N. S.)

451; *State* v. *Slamon*, 73 Vt. 212, 50 Atl. 1097, 87 Am. St. Rep. 711; Note 59 L. R. A. 470; *State* v. *Edwards*, 51 W. Va. 220, 41 S. E. 429, 59 L. R. A. 465; Note 87 Am. St. Rep. 714; *State* v. *Sutter*, 71 W.Va. 371, 76 S. E. 811, 43 L. R. A. (N. S.) 399. This doctrine is quoted with approval in *Lucchesi* v. *Commonwealth*, 122 Va., 876–877, 94 S. E. 925.

The leading case in support of this doctrine is *Commonwealth* v. *Dana*, 2 Metc. (Mass.) 329, 337 (1841), in which Wilde, J., said: "Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence, the court can take no notice how they were obtained, whether lawfully or unlawfully, nor would they form a collateral issue to determine the question."

This case was followed by the Supreme Court of Massachusetts in the recent case of *Commonwealth* v. *Wilkins*, 243 Mass. at page 361, 138 N. E. (1923), at page 13, involving the illegal seizure of intoxicating liquor. Speaking through Rugg, C. J., the court said: "It is a generally recognized principle of the law of evidence that courts do not pause in the trial of cases to investigate whether physical evidence, such as intoxicating liquors kept, carried or sold contrary to law, was obtained lawfully or unlawfully. That is regarded as a collateral inquiry. The only matter considered by the court is whether such evidence is pertinent to the issue. Courts do not impose an indirect

penalty upon competent evidence because of illegality in obtaining it. An ordinary police officer is not regarded as the agent of government if he acts outside the scope of his authority in seizing tangible evidence of crime. He does not carry with him the support of the government, but incurs personal liability if he fails to keep within the bounds of his duty. Outside those bounds he has no more color of authority than a private individual. Whether he commits a crime or a civil wrong, the offending officer alone is responsible. *Bolster* v. *Lawrence*, 225 Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285, and cases cited. For the misconduct of a private individual the government is not answerable. He may be brought to court to answer for his wrong either civilly or criminally. But his misconduct ought not to hamper the government in the enforcement of laws and the preservation of order. The wrong committed in seizing the liquor without a warrant was a transaction by itself. It has no necessary connection with its subsequent use as evidence.

"The motion in the case at bar involved the question whether the liquor was contraband or was lawfully in the possession of the defendant. Courts commonly do not concern themselves with the adjustment of property rights between wrongdoers contending as to possession of that which the law does not recognize as innocent and innocuous. The law leaves the parties where they put themselves. *Duane* v. *Merchants' Legal Stamp Co.*, 231 Mass. 113, 120 N. E. 370. The defendant by his motion did not assert the lawfulness of his purpose and right to the seized liquor. He asked for its return simply because seized unlawfully."

In *People* v. *Mayen*, 188 Cal. 227, 205 Pac. 437, the Supreme Court of California said: "There is no rule better established or more universally recognized by

the courts than that where competent evidence is produced on a trial the courts will not stop to inquire or investigate the source from whence it comes or the means by which it was obtained.

" * * * * It may, in this connection, be noted that the decisions of our own court and of every other jurisdiction are in entire accord with the Supreme Court of the United States in holding that the seizure by officers of the law of private papers and effects, by unlawful and unauthorized entry and search, to be used as evidence in criminal prosecutions of the persons from whom taken, is a violation of the constitutional right to security against unreasonable searches and seizures; and that such constitutional guaranty is one which should be zealously enforced in behalf of every citizen. But no authority, so far as we have been able to discover, has suggested that the subsequent use of articles so taken as evidence is in itself any part of the unlawful invasion of such constitutional guaranty. The search and seizure are complete when the goods are taken and removed from the premises. Whether the trespasser converts them to his own use, destroys them, or uses them as evidence, or voluntarily returns them to the possession of the owner, he has already completed the offense against the Constitution when he makes the search and seizure, and it is this invasion of the rights of privacy and the sacredness of a man's domicil with which the Constitution is concerned.

" * * * * Thus it is that almost from time immemorial courts engaged in the trial of a criminal prosecution have accepted competent and relevant evidence without question, and have refused to collaterally investigate the scource or manner of its procurement leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the goods wrongfully taken.

" * * * * We concur with the authorities cited that even the technical right of citizens to be protected from unlawful searches and seizures should be zealously safe-guarded and the infringement thereof adequately punished; but we are not prepared to impose upon the courts of this State the duty and burden of injecting into a criminal prosecution the collateral investigation of every objection that may be raised as to the source from which and the manner in which evidence in the hands of public prosecutors has been obtained. The parties aggrieved should be left to independent action to protect their constitutional rights, and obtain redress for their infringement."

In the same opinion (188 Cal. 244, 205 Pac. at page 438), the court commenting upon its opinion in the case of *People* v. *Le Doux*, 155 Cal. 535, 102 Pac. 517, quotes therefrom, with approval, as follows:

"It thus appears that whatever wrong may be perpetrated by the invasion of one's constitutional rights against unreasonable search and seizure, the redress for that wrong is not in the exclusion of pertinent evidence which may be obtained by the seizure. The courts, upon the mere question of admitting or rejecting evidence, will not take cognizance of the mode of its production, unless it be shown that the defendant has been compelled himself to give or produce it. So it is said * * * * in *People* v. *Alden, supra,* 'nor does the competency of evidence in any way depend upon the means by which it is brought to the court where it is offered in evidence.' The letters were, therefore, properly admitted in evidence"

The Supreme Court of Georgia, in *Williams* v. *State,* 100 Ga. at page 519, 28 S. E. 627, 39 L. R. A. 269, states the law thus: "As we understand it, the main, if not the sole, purpose of our constitutional inhibitions

against unreasonable searches and seizures was to place a salutary restriction upon the powers of government. That is to say, we believe the framers of the Constitution of the United States, and of this and other States, merely sought to provide against any attempt, by legislation or otherwise, to *authorize, justify* or *declare lawful* any unreasonable search or seizure. This wise restriction was intended to operate upon legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives, so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary, so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure, whether confessedly without any color of authority, or sought to be justified under the guise of legislative sanction. For the misconduct of private persons, acting upon their individual responsibility and of their own volition, surely none of the three divisions of government is responsible. If an official, or a mere petty agent of the State, exceeds or abuses the authority with which he is clothed, he is to be deemed as acting, not for the State, but for himself only; and therefore he alone, and not the State, should be held accountable for his acts. If the constitutional rights of a citizen are invaded by a mere individual, the most that any branch of government can do is to afford the citizen such redress as is possible, and bring the wrongdoer to account for his unlawful conduct. The office of the Federal and State Constitutions is simply to create and declare these rights. To the legislative branch of government is confided the power, and upon that branch alone devolves the duty, of framing such remedial laws as are best calculated to protect the citizen in the enjoyment of such rights, and

as will render the same a real, and not an empty,
blessing * * *.

"Whether or not prohibiting the courts from receiving
evidence of this character would have any practical and
salutary effect in discouraging unreasonable searches
and seizures, and thus tend towards the preservation of
the citizen's constitutional right to immunity therefrom,
is a matter for legislative determination."

In *Shields* v. *State*, 104 Ala. 35, 16 So. 85, 53 Am. St.
Rep. 17, the court said: "While it is true the search
of the defendant was without legal justification, a
trespass, and an indictable misdemeanor, we know of
no principle or theory upon which the State may be
deprived of the right to employ the evidence of a
criminal offense thus obtained.

"* * * Courts, in the administration of the crim-
inal law, are not accustomed to be over-sensitive in re-
gard to the sources from which evidence comes, and will
avail themselves of all evidence that is competent and
pertinent, and not subversive of some constitutional or
legal right. The State had no connection with, and had
no agency in, the wrong committed by the sheriff. The
law appoints the remedy for the redress of the wrong,
but the exclusion of the evidence criminating the de-
fendant is not within the scope of the remedy, or the
measure of redress. Evidence is not infrequently ob-
tained by methods which are reprehensible in good mor-
als, offensive to fair dealing, subjecting it to unfavor-
able inferences, the party relying upon it must neutral-
ize, to entitle it to full credence. And evidence is some-
times obtained under circumstances which meet with
the unqualified disapprobation of the courts. The evi-
dence, however unfairly and illegally obtained, is not
subject to exclusion, if it be of facts in themselves rele-
vant."

Section 3281 of the Revised Code, as re-enacted in section 16 of the act of Congress, which became effective February 8, 1875 (U. S. Comp. St. § 5966), provides that "where any person carries on the business of a distiller without giving bond and with the intent to defraud the United States of the tax on the spirits distilled, there shall be forfeited to the United States (1) all distilled spirits or wines, and all stills or other apparatus for or intended to be used for the distillation of spirits, owned by such person, wherever found; (2) all distilled spirits or wines and personal property found in the distillery," etc.

The case of *United States* v. *Stowell*, 133 U. S. at page 16, 10 Sup. Ct. 247, 33 L. Ed. 555, was upon information for the forfeiture of the particular property seized by the collector of internal revenue, including a copper still, a boiler and engine, a pump, vats and tanks, and other machinery and fixtures; a quantity of malt and hops, two horses and wagons and harnesses, and other personal property. Mr. Justice Gray, speaking for the court, said: "By the settled doctrine of this court, whenever a statute enacts that upon the commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."

The National prohibition law (41 U. S. Statutes at Large, 315), in section 25 (U. S. Comp. St. Ann. Supp. 1923, §10138½m), provides in part as follows: "It shall be unlawful to have or possess any liquor or prop-

erty designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property."

In *United States* v. *Fenton, et al* (D. C.), 268 Fed. 221, the court held that liquors and personal property coming under the provisions of the law above quoted are, upon their seizure, forfeited to the United States; that the seizure thereof, even if irregular, is not a seizure of the property of the parties in whose possession found; that such seizure does not violate amendments IV and V of the Federal Constitution; and that the property so seized is, therefore, competent evidence against the accused.

[7] Section 22 of the Virginia prohibition law (Acts 1918, chapter 388) with certain exceptions not material to the consideration of this case, provides that "ardent spirits and containers in which ardent spirits are manufactured, kept, stored, possessed, sold or in any manner used in violation of the provisions of this act, shall be deemed contraband and shall be forfeited to the Commonwealth,   *   *   *."

It is clear that under this section the whiskey, containers and siphon found in the defendant's dwelling and used in illicitly storing for sale and selling ardent spirits were forfeited to the Commonwealth, and were not the property of the defendant at the time they were seized by the officers, the right to them having already vested in the Commonwealth.

The court should keep the articles in its custody for such disposition as evidence or otherwise as to it may seem proper, and not cause the defendant to further violate the law by delivering them into her unlawful possession.

For an enlightening discussion of the admissibility of evidence obtained by illegal search and seizure, in which

Prof. Wigmore sustains the admissibility of such evidence, see Wigmore on Evidence, Vol. 4, (2d ed.), sections 2183 and 2184, and notes.

Among the courts which have ruled that evidence acquired by illegal search and seizure is *not* competent, will be found 'the Supreme Court of the United States, which has been followed by most of the Federal courts and several of the State Supreme Courts.

The Supreme Court of the United States has had occasion to consider the question in *Boyd* v. *United States*, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Adams* v. *New York*, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; *Weeks* v. *United States*, 232 U. S. 383; 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; *Silverthorne* v. *U. S.*, 252 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319; *Gouled* v. *United States*, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647; *Amos* v. *United States*, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654; and *Burdeau, Spl. Asst. Atty. General* v. *McDowell*, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159.

Until the *Boyd Case* was decided, the conclusions of the court in the *Dana Case, supra*, were accepted in all jurisdictions as the law governing the question at issue.

The *Boyd Case, supra*, was a proceeding to establish the forfeiture of certain goods alleged to have been fraudulently imported without paying the duties thereon. It was held that an order of court, made under the fifth section of the act of June, 1874, entitled "an act to amend customs laws," etc., requiring the claimants of goods to produce a certain invoice in court for the inspection of the government attorney to be offered in evidence by him was an unconstitutional exercise of authority, and was an unreasonable search and seizure within the spirit and meaning of the fourth amendment.

The court further held that a proceeding to forfeit a person's goods for an offense against the law, though civil in form, is a 'criminal case' within the meaning of that part of the fifth amendment, which declares that no person "shall be compelled in any criminal case to be a witness against himself."

It will be observed that the defendant in the instant case was not herself required to produce the articles in court.

In *Adams* v. *New York* (1904), 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, the court, practically repudiating the doctrine of the *Boyd Case*, held that it was within the established power of the State to prescribe the evidence which is to be received in its own courts, and approved the doctrine that a court considers the competency of the evidence and not the method by which it was obtained; and that a collateral issue will not be raised to ascertain the source from which testimony competent in a criminal case comes.

In the *Weeks Case, supra,* the court returned to the doctrine of the *Boyd Case,* and held that the party whose documents were obtained by illegal search and seizure had a right to obtain their return *by motion before trial;* and reversed the judgment of conviction based upon the introduction of the documents in evidence, after such motion had been made and overruled. The court also held that the fourth amendment is not directed to the individual misconduct of State officials, but that its limitations reach the Federal government and its agencies.

In the *Silverthorne Case, supra,* the court, following the *Weeks Case,* held that books and papers produced for use in a criminal proceeding by the government, through a previous unconstitutional search and seizure executed by its officers under color of a void writ, may be restored to the defendant if the application be sea-

sonably interposed and not raised as a collateral issue at the trial of the indictment.

In the *Gouled Case, supra,* it is held that the use of papers seized in a search, unconstitutional under amendment IV, has the effect to compel the defendant to become a witness against himself contrary to amendment V, and that a conviction based upon such evidence must be set aside.

In the *Amos Case, supra,* the court held that a petition by the accused, presented after the jury was sworn but before the evidence was offered, for the return to him of property unlawfully seized from him without warrant and intended to be used as evidence against him, was not presented too late and should have been granted, and that the motion to strike out the evidence obtained by seizure should have been sustained; since the testimony of the government officers, who made it, showed conclusively that it was made without warrant.

The property described in the petition was whiskey on which the revenue tax had not been paid, which defendant was charged with having removed to a place other than a government warehouse. It does not appear from the record that there was a Federal statute declaring the whiskey in the case, as in the instant case, to be contraband and forfeited to the government.

In *Burdeau, Asst. Atty. Gen.,* v. *McDowell, supra* (1921), the court held that amendment IV to the Constitution of the United States giving protection against unlawful searches and seizures applies only to governmental action, and that the amendment is not violated by the seizure of private papers by a private corporation from the possession of a director and employee, though the seizure was unlawful; and that the use of his private books and papers in a criminal prosecution against the accused, where they had been seized unlaw-.

fully, is not a violation of amendment V to the Federal Constitution.

The following are among the cases in which the State courts held that evidence obtained by illegal search and seizure is not competent:  *Youman* v. *Commonwealth,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303; *Tucker* v. *State,* 128 Miss. 211, 90 So. 845, 24 A. L. R. 1377; *State* v. *Peterson,* 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284; *State* v. *Wills,* 91 W. Va. 659, 114 S. E. 261, 24 A. L. R. 1398; *State* v. *Rowley* (Iowa), 187 N. W. 7; *State* v. *Gibbons,* 118 Wash. 171, 203 Pac. 390; *Hughes* v. *State* (Tenn.), 238 S. W. 588.

[8] According to the settled law, amendments IV and V to the Federal Constitution do not govern the several States, nor the courts thereof.  *Eilenbecker* v. *Plymouth,* 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; *Ohio ex rel. Lloyd* v. *Dollison,* 194 U. S. 445, 24 Sup. Ct. 703, 48 L. Ed. 1062; *Ensign* v. *Commonwealth of Pennsylvania,* 227 U. S. 592, 33 Sup. Ct. 321, 57 L. Ed. 658.

In *Eilenbecker* v. *Plymouth, supra,* the court held that it has been "often decided by this court, that the first eight articles of the amendments to the Constitution have reference to powers exercised by the government of the United States, and not to those of the States." Citing *Livingston* v. *Moore,* 7 Pet. 469, 8 L. Ed. 751; *The Justices* v. *Murray,* 9 Wall. 274, 19 L. Ed. 658; *Edwards* v. *Elliott,* 21 Wall. 532, 22 L. Ed. 487; *United States* v. *Cruikshank,* 92 U. S. 542, 23 L. Ed. 588; *Walker* v. *Sauvinet,* 92 U. S. 90, 23 L. Ed. 678; *Fox* v. *Ohio,* 5 How. 410, 12 L. Ed. 213; *Presser* v. *Illinois,* 116 U. S. 252, 6 Sup. Ct. 580, 29 L. Ed. 615.

In the *Ensign Case, supra,* the court referred further to article 5 of the amendments to the Federal Constitution thus:  "But, as has been often reiterated, this amendment is not obligatory upon the governments of

the several States or their judicial establishments, and regulates the procedure of the Federal courts only." Citing *Barron* v. *Baltimore,* 7 Pet. 243, 8 L. Ed. 672; *Spies* v. *Illinois,* 123 U. S. 131, 166, 8 Sup. Ct. 22, 31 L. Ed. 80; *Brown* v. *New Jersey,* 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119; *Barrington* v. *Missouri,* 205 U. S. 483, 27 Sup. Ct. 582, 51 L. Ed. 890; *Twining* v. *New Jersey,* 211 U. S. 93, 29 Sup. Ct. 14, 53 L. Ed. 97. Proceeding with the opinion, the court adds: "We are referred to a similar prohibition in article 1, section 9, of the Constitution of Pennsylvania; but, even if the trial of the plaintiff in error proceeded in disregard of this provision, no Federal right was thereby infringed."

The Supreme Court of the United States and the State courts in holding that evidence procured in an unlawful search is inadmissible, have, in our view, failed to give due weight to certain pertinent and material considerations:

(a) The fourth amendment to the Federal Constitution does not prohibit searches and seizures without a warrant under all circumstances.

It prohibits *unreasonable searches and seizures,* and the *issuance* of warrants, *except* upon probable cause shown, supported by oath or affirmation, and particularly describing the place to be searched and the persons, or things, to be seized. It prohibits the issuance of *general* search warrants, as had been the custom in England for many years prior to the American Revolution. *United States* v. *Snyder* (D. C.), 278 Fed. 650.

(b) The provision of the fourth amendment, inhibiting search and seizure by officers without a search warrant *does not prohibit the introduction against the accused* of the *evidence procured in the course of the unlawful search.* The unlawful search is in itself a completed offense against the constitutional rights of the accused, of

which the introduction of the evidence forms no part. Its introduction is the act of the court and *not* the act of the offending party.

(c) An officer making a search without a warrant, or under an illegal warrant, is a trespasser and not the representative of the government. Nor is the introduction of the evidence illegally obtained by him a ratification of his illegal acts. Such evidence is of the same class as evidence illegally obtained by a private citizen, which is held to be admissible. *Burdeau* v. *McDowell, supra.*

(d) The language used by the framers of the State and Federal Constitutions clearly indicates that they intended to protect persons, houses and effects against illegal searches and seizures by inflicting direct penalties upon the offending parties, and not by depriving the State or Federal government of its right to use evidence, otherwise competent and pertinent, against those who have violated its penal laws.

(e) The law provides ample protection for the sanctity of the home by inflicting a proper penalty, as in other cases, upon the offending party in a direct proceeding instituted for that purpose.

(f) The fifth amendment, so far as it provides that no person shall be a *witness* against himself, has reference to and was intended to prevent a practice then prevailing in continental Europe, and to some extent in England and Scotland, by which an alleged criminal was compelled to make answer to questions by which he would incriminate himself.

[9] It follows that in construing the Virginia Bill of Rights and the Virginia search and seizure law, this court is not bound by the decisions of the United States Supreme Court construing the fourth and fifth amendments to the Federal Constitution.

With the utmost deference for the opinions of that

high tribunal, we have been unable, for the reasons above stated, to follow them in this case.

We are of the opinion that the incriminating articles were properly admitted as evidence.

[10] The next assignment of error is to the action of the court in allowing the written memorandum found on the floor to be introduced as evidence for the Commonwealth.

This paper tended to show that the ardent spirits found were stored by the accused for sale. She exercised control over the entire building, and carried the key to the closet in the room in which the paper was found. Without doubt she had the opportunity to know; and the circumstances show that she must have known, what was going on in the house. The paper was properly admitted as an incriminating circumstance to be considered by the jury along with the other evidence in the case.

The *Payne Case,* 31 Gratt. (72 Va.) 857, relied on by the plaintiff in error, is not controlling, since in that case the evidence showed that Payne not only had no knowledge of the slip of paper, but had no opportunity to know anything about it.

The remaining assignment of error is the refusal of the court to set aside the verdict as contrary to the law and the evidence.

[11] It seems unnecessary to review the testimony in detail. When we consider the presence of the whiskey, the empty containers, siphon and glasses, all smelling strongly of whiskey, the memorandum order found on the floor, and the bad reputation of the defendant as a violator of the prohibition law, we cannot say the verdict is contrary to the evidence.

The judgment will be affirmed.

*Affirmed.*