# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## OSCAR B. HALL v. COMMONWEALTH.

### November 12, 1925.

1. GRAND JURY—*Advice to Grand Jury by Commonwealth's Attorney—Commonwealth's Attorney Going Before Grand Jury—Section 4864 of the Code of 1919.*—It is the policy of the law and the purpose of section 4864 of the Code of 1919 to give to the grand jury the benefit of the advice of the attorney for the Commonwealth relative to the discharge of their duties, without permitting him, by his presence, or otherwise, to influence them in reaching a conclusion, during their deliberations.

2. GRAND JURY—*Advice to Grand Jury by Commonwealth's Attorney—Commonwealth's Attorney Going Before Grand Jury—Case at Bar.*—In the instant case, a prosecution for a violation of the prohibition law, the attorney for the Commonwealth, at the request of the court and in open court, laid before the grand jury certain indictments and stated to them the law in regard to the various indictments which they were to consider, without specially referring to the indictment against the accused. He did not go before the grand jury "during their deliberations," but simply advised the "members thereof" in open court.

   *Held:* That the court did not err in overruling a motion to quash the indictment on this account.

3. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Names of Witnesses Written on the Indictment—Case at Bar.*—In the instant case, accused moved that the indictment be quashed because it, when delivered to the grand jury, contained the names of certain witnesses which were written thereon. Following the usual custom the attorney for the Commonwealth wrote the names of the witnesses at the foot of the indictment before sending it to the grand jury. This was done for the convenience of the jury, and its action in returning the indictment with the names thereon was a ratification of the act of the attorney for the Commonwealth, and made his act theirs, and was a sufficient compliance with section 4860 of the Code of 1919, providing that the names of the witnesses shall be written at the foot of the indictment and therefore the indictment was valid.

4. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Names of Witnesses Written on the Indictment—Section 4860 of the Code of 1919 Directory*

*Only.*—Section 4860 of the Code of 1919 providing that when an indictment or presentment is made or found, the names of the grand jurors giving the information, or of the witnesses, shall be written at the foot of the presentment or indictment, is merely directory, and the names of the witnesses may be omitted altogether without invalidating the indictment.

5. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Signature of Foreman—True Bill.*—The failure of the foreman of the grand jury to write the word "foreman" after his name on the indictment, is a matter of no moment. The presentation of the indictment in open court by the grand jury and the entry of the order book showing the finding of the grand jury is sufficient evidence of that fact, and makes it immaterial whether the words "a true bill" were in fact endorsed on the indictment or not.

6. INTOXICATING LIQUORS—*Proof of other Crimes—Res Gestae—Case at Bar.*—In the instant case the indictment charged transporting ardent spirits and that accused had on his person a firearm while transporting the ardent spirits, it was assigned as error that the court permitted the Commonwealth to prove that the accused, a very short time prior to committing the offense complained of, while intoxicated, was operating an automobile on the public road at an unlawful rate of speed and cursed and abused another traveler on the road. The circumstances necessary to establish the charge for which the accused was being tried were so connected with the circumstances which tended to show the other criminal acts, that the proof of the principal offense involved the proof of another offense.

*Held:* That the evidence complained of was admissible as a part of the *res gestae.*

7. CRIMINAL LAW—*Proof of other Crimes—Res Gestae.*—The law will not permit one accused of crime to go unpunished simply because the Commonwealth cannot prove his guilt without bringing in some evidence which tends to show that he has committed other crimes.

8. APPEAL AND ERROR—*Harmless Error—Admission of Improper Evidence where the Jury Found the only Verdict which could have been Found Under the Evidence.*—In a criminal case the admission of improper evidence is harmless where the guilt of the accused was clearly established by the evidence, and the jury gave him the minimum punishment for the offense charged.

9. INTOXICATING LIQUORS—*Autrefois Acquit or Convict—Driving a Car while Intoxicated—Transporting.*—In the instant case, an indictment for transporting intoxicating liquor and carrying a firearm, it was not error to exclude evidence that accused had been convicted of operating a car while under the influence of liquor on the day on which the offense of transporting was alleged to have been committed. The driving of an automobile while intoxicated was a separate

offense from that of transporting ardent spirits, and proof of a conviction of the former would not bar a prosecution for the latter. The evidence was immaterial and irrelevant, and was properly excluded.

10. INTOXICATING LIQUORS—*Carrying Weapons—Defense that Accused was a Special Officer—Case at Bar.*—In the instant case, a prosecution for carrying a firearm while unlawfully transporting intoxicating liquor, it was held that the lower court did not err in refusing to permit the accused to prove that he was a special constable or a special officer and had a warrant to arrest a man charged with a felony.

11. INTOXICATING LIQUORS—*Carrying Weapons—Purpose of Statute—Officers of the Law.*—Section 5½ of the prohibition act (Acts of 1922, page 575), making it a felony to violate the prohibition act while armed, was manifestly intended to protect the officers of the law from the violent assaults of those who would violate the prohibition laws. To hold that an officer, who ordinarily has the right to carry a firearm while in the *bona fide* discharge of his official duties, can, in the teeth of the statute, arm himself with a deadly weapon and unlawfully transport ardent spirits without making himself amenable to the penalties imposed by this act, would be to confer a special favor upon this class of offenders which is not extended to others who violate this law. There is nothing in the language of the statute to warrant such a construction.

12. CRIMINAL LAW—*Searches and Seizures—Admissibility of Evidence Procured by Illegal Search and Seizure.*—Evidence procured by illegal search and seizure is admissible against one charged with crime, unless the accused has been compelled himself to give or procure it, as where a confession obtained by duress is offered in evidence.

13. INTOXICATING LIQUORS—*Transporting—Instructions.*—In a prosecution for unlawfully transporting intoxicating liquor an instruction that every form of transporting ardent spirits within this State not authorized by law is illegal, is not erroneous.

14. INTOXICATING LIQUORS—*Transportation—Evidence to Sustain a Charge of Transportation.*—In the instant case accused was charged with unlawfully transporting intoxicating liquor while armed. Accused was intoxicated and ran his car against a telegraph pole. A search of the car revealed no ardent spirits in it, but defendant was seen to throw a package across the road. The package found at this point contained ardent spirits. It was contended for accused, who was a special officer, that the liquor was probably left at the point of the accident by someone else and found by accused and taken from the ground by him, but this would have been seen by a witness approaching the car of accused from the rear. A woman who was riding with accused was not called to prove that no liquor was

being transported and it was uncontradicted that accused carried a pistol upon his person.

*Held:* That the evidence supported a verdict of guilty.

Error to a judgment of the Circuit Court of Albemarle county.

*Affirmed.*

The opinion states the case.

*W. O. Fife* and *J. T. Coleman, Jr.*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

WEST, J., delivered the opinion of the court.

Oscar B. Hall was tried under an indictment charging him in one count with transporting ardent spirits and in another with having on his person a firearm while so transporting it. The jury found him guilty and fixed his punishment at six months in jail. The judgment entered against him upon that verdict is before us for review.

The trial court certifies as a part of the facts adduced at the trial by the Commonwealth:

"One Percy Harris testified that on the evening of the second day of September, 1923, at about 7:30 o'clock, he was driving an automobile out of the town of Scottsville, Virginia, accompanied by his son, son-in-law and his wife, when he heard a car behind him, and driven by the defendant, blowing and sounding his horn for the road, that witness drew over to his side and permitted defendant to pass; that shortly thereafter the witness passed defendant's car, and that

thereupon the defendant, driving in a reckless manner and at a terrific rate of speed, to-wit, forty miles per hour, repassed the witness, and at the time of so doing the defendant leaned forward in his, defendant's, car and directed at the witness a violent oath; that the defendant ran his car a short distance up the road ahead of witness, and struck a telephone pole on the side of the road; that the witness drove up to the scene of the accident, and there found the defendant in an intoxicated condition, and that the latter immediately began to curse and abuse the witness again in a violent manner; that a woman and child were also in defendant's car, and that the child had been rendered partially unconscious, as the witness thought, by the accident; that the witness attended the child, and the defendant was, during all of this time, cursing and abusing the witness violently, though he made no actual threats or demonstration toward the witness; that the defendant was in his shirt sleeves, and had a pistol in a holster strapped around his waist, not concealed, and in plain view; that the witness sent an occupant of his car back to Scottsville for an officer, and that shortly thereafter the mayor of the town of Scottsville, one Jackson Beal, arrived upon the scene of the accident in company with the sergeant of the said town, and that the mayor thereupon placed the defendant under arrest; that the witness, Harris, took the pistol from the person of the defendant in the presence of the mayor; that the mayor thereupon ordered one Percy Harris, Jr., and one John Moulton to search the car of the defendant for ardent spirits; that the search revealed no ardent spirits in the car, but the defendant was seen, while the search was in progress, to throw a package across the road; that the mayor thereupon directed some of the bystanders to

get it, and that said Percy Harris, Jr., picked up the package from the road, and handed the same to Sergeant Beal; that Sergeant Beal had a flashlight and upon his examination the package was found to contain a one-half gallon fruit jar in which was a small quantity of some ardent spirits. This liquor was exhibited to the jury, the one-half gallon jar contained approximately a pint of fluid.

"Another witness, said Percy Harris, Jr., also one John Moulton, testified to substantially the same facts that were testified to by Percy Harris, Sr., and in part this testimony of Percy Harris, Sr., was corroborated by Jackson Beal, mayor, and by W. S. Beal, sergeant of the town of Scottsville. None of the witnesses testified to having seen the defendant take the package from the car, but he was seen by these witnesses to have thrown the package across the road. The witness, W. S. Beal, testified that the contents of the jar 'smelled like whiskey.' "

The accused assigns as error, first, the action of the court in overruling his motion to quash the indictment.

The grounds of this motion are:  (1)  That the attorney for the Commonwealth was allowed, after the grand jury had been sworn and charged by the court, to address it as to its duty under the law;  (2) that the indictment, when delivered to the grand jury, contained the names of certain witnesses which were written thereon by the attorney for the Commonwealth;  (3)  that the endorsement on the indictment, "a true bill," fails to show the official character of the juror who signed it, in that the word "foreman" does not appear thereon.

[1] The Code, section 4864, makes it unlawful for the attorney for the Commonwealth to "go before the grand jury during their deliberations, except when duly

sworn to testify as a witness, but he may advise the foreman of the grand jury or any member or members thereof in relation to the discharge of their duties."

It is the policy of the law and the purpose of this act to give to the grand jury the benefit of the advice of the attorney for the Commonwealth relative to the discharge of their duties, without permitting him, by his presence, or otherwise, to influence them in reaching a conclusion, during their deliberations.

[2] It appears from the certificate of the trial judge that the attorney for the Commonwealth, at the request of the court, and in open court, laid before the grand jury certain indictments and stated to them the law in regard to the various indictments which they were to consider, without specially referring to the indictment against the accused. He did not go before the grand jury "during their deliberations," but simply advised the "members thereof" in open court.

No right of the accused was violated.

[3] Code, section 4860, provides: "When a presentment or indictment is so made or found, the names of the grand jurors giving the information, or of the witnesses, shall be written at the foot of the presentment or indictment."

Following the usual custom, the attorney for the Commonwealth wrote the names of the Commonwealth's witnesses at the foot of the indictment before sending it to the grand jury. This was done for the convenience of the jury, and its action in returning the indictment with the names thereon was a ratification of the act of the attorney for the Commonwealth, and made his act theirs.

[4] This court having held that section 4860 is merely directory, the names of the witnesses might have been omitted altogether without invalidating the indictment. *Clopton's Case*, 109 Va. 815, 63 S. E. 1022.

[5] The failure of the foreman of the grand jury to write the word "foreman" after his name is a matter of no moment. The presentation of the indictment in open court by the grand jury and the entry on the order book showing the finding of the grand jury is sufficient evidence of that fact, and makes it immaterial whether the words "a true bill" were in fact endorsed on the indictment or not. *Price's Case*, 21 Gratt. (62 Va.) 862.

[6] The second and third assignments of error involve the action of the court in permitting the Commonwealth to prove that the accused, a very short time prior to committing the offense complained of, while intoxicated, was operating an automobile on the public road at an unlawful rate of speed and cursed and abused one Percy Harris.

The contention is that the court permitted proof of other crimes to the prejudice of the accused. This is permissible, when, as in the instant case, the circumstances necessary to establish the charge for which the accused is being tried are so connected with circumstances which tend to show other criminal acts, that the proof of the principal offense involves the proof of another offense. *Walker's Case*, 1 Leigh (28 Va.) 574. In such cases the evidence complained of is admissible as a part of the *res gestae*. *Snarr v. Commonwealth*, 131 Va. 815, 109 S. E. 590.

[7, 8] The law will not permit one accused of crime to go unpunished simply because the Commonwealth cannot prove his guilt without bringing in some evidence which tends to show that he has committed other crimes. If the evidence objected to was improperly admitted, the error was harmless, since the guilt of the

accused was clearly established by the evidence, and the jury gave him the minimum punishment for the offense charged in the second count of the indictment.

[9] The fourth assignment of error is the refusal of the court to permit the accused to prove by the deputy clerk of the court that the accused had been convicted in said court of operating a car while under the influence of liquor on the second day of September, 1923, the day on which the offense for which he was being tried was alleged to have been committed.

The driving of an automobile while intoxicated was a separate offense from that of transporting ardent spirits, and proof of a conviction of the former would not bar a prosecution for the latter. The evidence was immaterial and irrelevant, and was properly excluded. 16 C. J., p. 272, sec. 543.

[10] The fifth assignment of error is the action of the court in refusing to permit the accused to prove that he was a special constable, or special officer, and had a warrant to arrest a man charged with a felony.

Section 5½ of the prohibition law, as amended, approved March 23, 1922 (Acts 1922, p. 575), provides as follows:

[11] "If any person shall unlawfully manufacture, transport, or sell any ardent spirits, as herein defined, and at the time of such manufacturing, transporting, or selling, or aiding or assisting in any manner in such act, shall carry on or about his person, or have on or in any vehicle which he may be using to aid him in any such purpose, or have in his possession, actual or constructive, at or within one hundred yards of any place where any such intoxicating liquor is being unlawfully manufactured, transported or sold, any firearm, dirk, bowie-knife, razor, slung-shot, metal knucks or any weapons of like kind, he shall be deemed

guilty of a felony, and on conviction shall be confined in penitentiary not less than one year nor more than three years, or, in the discretion of the jury, or the court trying the case without a jury, confined in the jail for not less than six months nor for more than twelve months."

[12] This section was manifestly intended to protect the officers of the law from the violent assaults of those who would violate the prohibition laws. To hold that an officer, who ordinarily has the right to carry a firearm while in the *bona fide* discharge of his official duties, can, in the teeth of the statute, arm himself with a deadly weapon and unlawfully transport ardent spirits without making himself amenable to the penalties imposed by this act, would be to confer a special favor upon this class of offenders which is not extended to others who violate this law. We find nothing in the language of the statute to warrant such a construction. When an officer, sworn to support and maintain the law, knowingly and deliberately becomes a law breaker, he is more deserving of punishment that the average citizen. This assignment is without merit.

The next assignment of error deals with the action of the court in giving instructions A and B for the Commonwealth, and refusing instructions 1, 2 and 4, offered by the accused. These instructions are as follows:

"A. The court instructs the jury that every form of transporting ardent spirits within this State, not authorized by statute, is illegal.

"B. The court instructs the jury that if they believe from the evidence that the accused, O. B. Hall, was unlawfully transporting ardent spirits and at the time of such transporting carried on or about his person, or had in any vehicle which he was using to aid him in

such transportation, firearms, then they may find him guilty, and may sentence him to confinement in the penitentiary for not less than one nor more than three years, or, in their discretion, confine him in jail for not less than six months nor more than twelve months. And the court further instructs the jury that no person, whether he be an officer of the law or attempting to act as such officer, has any right to carry firearms on or about his person or in any vehicle at the time he may be unlawfully transporting ardent spirits."

"1. The court instructs the jury that the defendant, O. B. Hall, has been tried on the charge of operating an automobile while under the influence of liquor, and they therefore cannot take this fact into consideration in considering this case.

"2. The court instructs the jury that the mayor of an incorporated town has no authority beyond a limit of a mile beyond the town limits, and if the jury believe from the evidence that the search of the automobile of O. B. Hall was made by direction of the mayor by persons appointed by him beyond the distance of a mile from those limits, that such search was unlawful and the jury cannot consider evidence found as a result of that search.

"4. The court instructs the jury that an officer or a person deputized as his special officer has authority while acting as such to carry firearms at all times."

For the reasons given in discussing the other assignments, the court did not err in refusing to give instructions 1 and 4.

[13] Instruction 2 was likewise properly refused. It is settled law in this jurisdiction that evidence procured by illegal search and seizure is admissible against one charged with crime, unless the accused has been compelled himself to give or procure it, as where a

confession obtained by duress is offered in evidence. *Gilly Hall's Case*, 138 Va. 727, 121 S. E. 154; *Casey's Case*, 138 Va. 714, 121 S. E. 513.

Thirty-three other States also allow evidence unlawfully secured to be admitted against the accused in a criminal prosecution. See foot-note (1). Several of the States are in accord with the Supreme Court of the United States in its ruling that evidence so obtained is not admissible against the accused.

Instructions A and B correctly stated the law, and when read with instruction 3, on reasonable doubt, sufficiently instructed the jury upon the law applicable to the case.

This brings us to the last assignment of error, which challenges the action of the court in overruling the motion to set aside the verdict as contrary to the law and the evidence.

[14] The facts and circumstances shown in the statement of facts certified by the trial court fully justified the jury in finding the accused guilty. The circumstances all tend to incriminate him and to disprove the contention of his counsel that the whiskey was probably left at the point of the accident by some one else and was found by the accused and taken from the ground by him. He was intoxicated and the car stopped because he ran it against a telegraph pole. Had the package containing the liquor been found on the ground, the accused would not have taken it up in full view of the witness, Harris, who was approaching him from the rear. Accused must have had the pack-

(1)   The States allowing such evidence to be admitted are: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Illinois, Kansas, Louisiana, Maine, Massachusetts, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio; Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah and Wisconsin.

age with him in the car, and threw it across the road to prevent its being found in his possession. The woman who was riding with the accused was not sworn as a witness to prove that no liquor was being transported.

The uncontradicted evidence is that the accused carried a pistol upon his person.

The judgment will be affirmed.

*Affirmed.*

BURKS, J., concurring:

I concur in the results of the opinion of the court, but not in the unqualified approval of the *Gilly Hall Case*, 138 Va. 727, 121 S. E. 154.

On the subject of evidence obtained by illegal search and seizure, the rule is different in cases like the instant case from what it is in the illegal search of a dwelling. *Carroll* v. *United States*, 267 U. S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543.

While there is much conflict of authority on the admissibility of evidence obtained by an illegal search and seizure, I think the holding of the Supreme Court of the United States should be followed. I do not think that the guilt or innocence of one accused of crime should depend on the court in which he is tried. The facts being admitted, the law determines the guilt or the innocence of the accused. The law to be administered is not a local statute, but the common law rule of evidence. This cannot be one thing in one court and another thing in another court. Upon an admitted state of facts, the accused cannot be guilty on one side of the hall and not guilty on the other. The law presents no such anomaly. One or the other of the courts must be wrong, and where there is conflict of authority among the State courts on a question of law common to

all the States, and the question has been determined by the unanimous opinion of the Supreme Court of the United States, I think the decision of that court should be followed.

The latest expression of opinion of that court is to be found in *Angello* v. *United States*, 46 S. Ct. 4, 70 L. Ed. ——, decided October 12, 1925, not yet officially reported, in which the court refused to receive in evidence cocaine obtained by an illegal search and seizure of a dwelling. In the course of the opinion it is said:

"While the question has never been directly decided by this court, it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein. *Boyd* v. *United States*, 116 U. S. 616, 624, *et seq.*, 630 6 S. Ct. 524, 29 L. Ed. 746; *Weeks* v. *United States, supra*, 393 [232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. & A. 1915B, 834, Ann. Cas. 1915C, 1177]; *Silverthorne Lumber Co* v. *United States, supra*, 391, [251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319]; *Gouled* v. *United States*, 255 U. S. 298, 308, 41 S. Ct. 261, 65 L. Ed. 647. The protection of the fourth amendment extends to all equally—to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is itself unreasonable and abhorrent to our laws. Congress has never passed an act purporting to authorize the search of a house without a warrant. On the other hand, special limitations have been set about the obtaining of search warrants for that purpose. Thus, the national prohibition act, approved October 28, 1919, c. 85, Tit. II, sec. 25, 41 Stat. 305, 315 (U. S. Comp. St. Ann. Supp. 1923, sec. 10138½m), provides that no search warrant shall issue to search any private dwelling

occupied as such unless it is being used for the unlawful sale of intoxicating liquor or is in part used for business purposes, such as store, shop, saloon, restaurant, hotel or boarding house. And later, to the end that government employees without a warrant shall not invade the homes of the people and violate the privacies of life, Congress made it a criminal offense, punishable by heavy penalties, for any officer, agent, or employee of the United States engaged in the enforcement of any law to search a private dwelling house without a warrant directing such search. Act of November 23, 1921, c. 134, sec. 6, 42 Stat. 222, 223 (U. S. Comp. St. Ann. Supp. 1923, Sec. 10184a). Safeguards similar to the fourth amendment are deemed necessary and have been provided in the Constitution or laws of every State of the Union. We think there is no State statute authorizing the search of a house without a warrant; and, in a number of State laws recently enacted for the enforcement of prohibition in respect of intoxicating liquors, there are provisions similar to those of section 25 of [title 2 of] the national prohibition act. Save in certain cases as incident to arrest, there is no sanction in the decision of the courts, Federal or State, for the search of a private dwelling house without a warrant. Absence of any judicial approval is persuasive authority that it is unlawful. See *Entick* v. *Carrington*, 19 Howard's State Trials, 1030, 1066. Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause. See *Temperani* v. *United States* (C. C. A.), 299 Fed. 365; *United States* v. *Rembert* (D. C.), 284 Fed. 996, 1000; *Connelly* v. *United States* (D. C.),

275 Fed. 509; *McClurg* v. *Brenton*, 123 Ia. 368, 372, 98 N. W. 881, 65 L. R. A. 519, 101 Am. St. Rep. 323; *People* v. *Margolis*, 220 Mich. 431, 190 N. W. 306; *Childers* v. *Commonwealth*, 198 Ky. 848, 250 S. W. 106; *State* v. *Warfield*, 184 Wis. 56, 198 N. W. 854. The search of Frank Angello's house and seizure of the can of cocaine violated the fourth amendment.

"It is well settled that, when properly invoked, the fifth amendment protects every person from incrimination by the use of evidence obtained through search or seizure made in violation of his rights under the fourth amendment. *Boyd* v. *United States, supra,* 630, *et seq.*, 6 St. Ct. 524; *Weeks* v. *United States, supra,* 398, 34 S. Ct. 341; *Silverthorne Lumber Co.* v. *United States, supra,* 391, 392, 40 S. Ct. 182; *Gouled* v. *United States, supra,* 306, 41 S. Ct. 261; *Amos* v. *United States,* 255 U. S. 313, 316, 41 S. Ct. 266, 65 L. Ed. 654. The Government contends that, even if the search and seizure were unlawful, the evidence was admissible because no application on behalf of defendant was made to the court for the return of the can of cocaine. The reason for such application, where required, is that the court will not pause in a criminal case to determine collateral issues as to how the evidence was obtained. See *Adams* v. *New York,* 192 U. S. 585, 594, 24 S. Ct. 372, 48 L. Ed. 575, affirming *People* v. *Adams,* 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675. But in this case the facts disclosing that the search and seizure violated the fourth amendment was not in controversy. They were shown by the examination of the witness called to give evidence. There was no search warrant; and from the first, the position of the government has been that none was necessary. In substance, Frank Angello testified that he never had possession of the can of

cocaine and never saw it until it was produced in court. There is nothing to show that, in advance of its offer in evidence, he knew that the government claimed it had searched his house and found cocaine there, or that the prosecutor intended to introduce evidence of any search or seizure. It would be unreasonable to hold that he was bound to apply for the return of an article which he maintained he had never had. Where, by uncontroverted facts, it appears that a search and seizure were made in violation of the fourth amendment, there is no reason why one whose rights have been so violated and who is sought to be incriminated by evidence so obtained, may not invoke protection of the fifth amendment immediately and without any application for the return of the thing seized. 'A rule of practice must not be allowed for any technical reason to prevail over a constitutional right.' *Gouled* v. *United States, supra*, 313, 41 S. Ct. 266. And the contention that the evidence of the search and seizure was admissible in rebuttal is without merit. In his direct examination Angello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained by the search. As said in *Silverthorne Lumber Company* v. *United States, supra*, 392, 40 S. Ct. 183: 'The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all.' The admission of evidence obtained by the search and seizure was error and prejudicial to the substantial rights of Frank Angello. The judgment against him must be set aside and a new trial awarded.''

In the instant case, the search was of an automobile then engaged in the illegal transportation of ardent spirits, and the rule applicable to dwellings does not apply (*Carroll* v. *United States, supra*); hence I concur in the results of the opinion of the court.