United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 02-30629

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

KELLY DONALD GOULD,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Louisiana

---

Before GARWOOD, SMITH and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

In this felon-in-possession prosecution (18 U.S.C. § 922(g)(1)), the Government appeals the district court's grant of the motion to suppress filed by defendant-appellee Kelly Donald Gould (Gould). We affirm.

### Facts and Proceedings Below

On October 17, 2000, the Livingston Parish Sheriff's Office (LPSO) was contacted by John Forehand, an employee of Gould.

Forehand asserted that Gould intended to kill two judges and unidentified police officers and to destroy telephone company transformers. The LPSO contacted the East Baton Rouge Parish Sheriff's Office (EBRSO) and informed it of Forehand's complaint. Sgt. Karl Kretser of the EBRSO performed a criminal history check and determined that Gould had been arrested numerous times for violent felonies and resisting police officers and "that he was a convicted felon for violent charges." Kretser's superiors also informed him that several days earlier Gould had made threatening remarks to someone, apparently in response to the unfavorable result of a court proceeding.

Kretser met with LPSO Detectives Jim Brown and Jason Ard to discuss the situation and then question the defendant. They knocked on the front door of the trailer home where he lived, which was answered by Dennis Cabral, who also lived in the trailer home. Forehand was also inside the home. The officers asked to speak to Gould, and Cabral told them he was probably asleep. The officers asked if they could look inside for the defendant, and Cabral agreed, pointing in the direction of Gould's bedroom.

Ard asked Cabral to go outside with him and Forehand, who had already stepped outside, citing safety reasons. Brown and Kretser entered the home and looked for the defendant. They testified that they believed that a search was necessary to ensure officer safety given Forehand's allegations and Gould's criminal history. The

2

door to Gould's bedroom was ajar; and, looking through and seeing Gould was not in bed, they entered.[1]  After not seeing him in the room, they looked in two closets.  They testified that they considered the closets potential hiding places.  In one closet, they saw three firearms.  They left the firearms in the closet and continued to search for Gould.

As Brown exited the bedroom, someone yelled that Gould had gone outside.  Brown went out the open back door and found Gould several minutes later, hiding behind a log in the woods.  The officers handcuffed Gould, advised him of his rights, and escorted him to a police car.  In the police car, the police questioned Gould about the guns.  The officers asked for and received Gould's consent to search the home, and he signed a written waiver of search warrant.  The officers then searched the home and retrieved the guns.  Gould was arrested for possession of firearms by a convicted felon.

Gould was indicted for felony possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1).  Upon Gould's motion, the district court suppressed the guns, finding that the search of the closet, characterized as a protective sweep, violated Gould's

---

[1]The district court–without appellate challenge–found that "the officers' initial entry into the mobile home was legal, because they had the voluntary consent of a resident.  However, Mr. Cabral had neither actual nor apparent authority to consent to the search of the master bedroom."

We do not interpret the district court's ruling as including a finding that the presence of the officers, when they initially observed that defendant was not in bed, was in violation of defendant's Fourth Amendment rights.

Fourth Amendment rights because it was not incident to an arrest.[2] The Court rejected the government's arguments that *United States v. Wilson,* 36 F.3d 1298 (5th Cir. 1994), could be distinguished. The Government moved for reconsideration, which was denied by the district court on May 16, 2002.

## Discussion

A. Standard of Review

When reviewing a ruling on a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo. *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). This court views the evidence in the light most favorable to the party that prevailed in the district court, which in this case was Gould. *Id.* Applicability of the good faith exception to the exclusionary rule is similarly reviewed when it was raised before the district court. *United States v. Cherna*, 184 F.3d 403, 406-07 (5th Cir. 1999).

As a panel, we are without authority to overrule the decision of another panel of this circuit. *See United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991). While this panel is not bound by dicta of a previous panel, *Curacao Drydock Co. v. M/V Akritas*, 710 F.2d 204, 206 (5th Cir. 1984), nevertheless in this circuit

---

[2]The court ruled that "Because the 'protective sweep' was not conducted as an incident to arrest, however, the search of the closet in the master bedroom was illegal."

4

alternative holdings are binding precedent and the presence of an alternative holding "does not deprive [a holding] . . . of its binding precedential force." *Williams v. Cain*, 229 F.3d 468, 474 n.5 (5th Cir. 2000).

B.  Applicability of Protective Sweep Exception

It is axiomatic that the physical entry of the home is one of the chief evils against which the Fourth Amendment is directed. *Welsh v. Wisconsin*, 104 S.Ct. 2091 (1984).  The Supreme Court has long held that exclusion of illegally obtained evidence is generally required, finding that the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, *Weeks v. United States*, 34 S. Ct. 341(1914), but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree."  *Nardone v. United States*, 60 S.Ct. 266, 268 (1939).  The Government does not dispute that, if the search violated the Fourth Amendment and is not subject to a good faith exception, this body of law requires that the evidence obtained must be excluded.

The Government does not contend the search here was permissible under the "hot pursuit" exception to the warrant requirement suggested by the Supreme Court *in Warden v. Hayden*, 87 S.Ct. 1642 (1967), or under the exigent circumstances exception

recognized in *Coolidge v. New Hampshire*, 91 S.Ct. 2022 (1971).[3] The Government asserts that the items found in the bedroom were in plain view and seized as a part of a valid "protective sweep" under *Maryland v. Buie*, 110 S.Ct. 1093 (1990). Gould counters that the case is controlled by language in *Wilson* stating the protective sweep exception is only applicable when the sweep is incident to arrest, but the Government maintains this is dicta and, furthermore, that the present case is factually distinguishable.

In *Wilson*, this court considered a search involving a defendant who was being investigated for possession of stolen mail. *Wilson*, 36 F.3d at 1301. The officers lacked probable cause to arrest the defendant, but went to the hotel where the defendant was believed to be staying in order to question him. Another man, to whom the room was registered, answered the door, invited the officers in, and told them the defendant was in the bathroom. The officer instructed the defendant to come out of the bathroom; after he did so, the officer searched the hotel room, finding a checkbook in a trash can in the bathroom. *Id.* The checkbook was stolen, and the defendant was convicted of possession of stolen mail. *Id*. at 1301-02.

The *Wilson* panel concluded that the seizure of the checkbook was unlawful. Rejecting the government's assertion that the search

---

[3]Nor does it argue on appeal the inevitable discovery doctrine recognized in *Nix v. Williams*, 104 S.Ct. 2501, 2509 (1984).

6

was incident to a protective sweep, this court wrote only a single paragraph on that issue, as follows:

> "*Protective Sweep?*
>
> The government argues that the seizure of the checkbook was lawful because it was discovered during a protective sweep of the hotel room. A "protective sweep" is a quick and limited search of a premises, *incident to an arrest* and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding. *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990). *The instant search* of the hotel room was *not made as an incident to an arrest and, therefore,* it *does not fit within the 'protective sweep' exception* to the warrant requirement. Moreover, under the instant circumstances, the seizure of the checkbook from the wastebasket was not within the narrow ambit of a "cursory visual inspection" of a place where a person could be hiding. *See Buie*, 494 U.S. at 327, 110 S.Ct. at 1094." *Id*. at 1035-36 (emphasis in next to last sentence added).

The Government appears to assert that the language in the last sentence in the above quotation—concerning taking the checkbook from the wastebasket not being within the "ambit of a 'cursory visual inspection' of a place where a person could be hiding"—represents both a factual scenario distinct from the present case and is the true holding of *Wilson*, the incident to an arrest language of *Wilson's* preceding sentence being dicta.

In any event, it is correct that the rummaging through the trash can in *Wilson* did not involve intrusion into a place where a person could be hiding and was a substantially more probing search than the cursory peering into the closets in the case *sub judice.*

7

However, simply because one part of the holding in *Wilson* may be inapplicable to the facts of this case, this panel is not at liberty to disregard the other language in *Wilson* that clearly constitutes a holding, in reference to an issue procedurally and factually actually before the court in that case, that the protective sweep exception is only applicable to searches incident to an arrest. As noted, in this circuit, alternative holdings are binding precedent. Nor can we reasonably read *Wilson* as holding that the protective sweep exception was unavailable simply because it was not justified *either* as being incident to an arrest *or* as being confined to a cursory visual inspection of a place where a person might be hiding. It seems to us that the only fair reading of *Wilson* is that its holding is expressed in the next to last sentence of its above quoted "protective sweep" paragraph, as plainly reflected by the word "therefore" in that sentence. The next sentence–concerning cursory visual inspection of potential human hiding places–begins "[m]oreover," indicating that it states a separate, additional reason. This entire paragraph of the *Wilson* opinion is plainly not written on the assumption that the search would have been valid if it had met the criteria of *either* the next to last *or* the last sentence of the paragraph.

The Government also seeks to factually distinguish *Wilson* on various grounds, arguing that the circumstances in *Wilson,* unlike those in the present case, entailed no reasonable suspicion of

8

danger, did not involve a search of a place where a person could be hiding, and involved a seizure that was not in plain view. However, the language in *Wilson* can only be read as a broad holding that, whatever the other facts of a case may be, the protective sweep exception is only applicable when the search is incident to an arrest. It would not be appropriate for this panel to rewrite a previous panel's decision to limit its plain scope. We therefore agree with Gould that *Wilson* controls this case.

However, we think that for several reasons that it would be appropriate for this court to review the present case en banc to consider whether this circuit should adhere to *Wilson's ipso facto* disallowance of all protective sweeps not incident to an arrest. First, federal courts have approved of the "knock and talk" strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity. *United States v. Jones*, 239 F.3d 716, 720 (5th Cir.), *cert. denied*, 122 S.Ct. 142 (2001).[4] The

---

[4]The district court erroneously faulted the "knock and talk" strategy as applied here on the factually clearly erroneous basis that before the officers went to the trailer home they had been informed by Forehand that the defendant had firearms there. The court stated in this respect:

". . . the officers could have obtained a valid search warrant based on the information provided to them by Mr. Forehand. Mr. Forehand informed the officers that, while at the mobile home one day, the defendant had retrieved a twenty-two caliber rifle, equipped with a scope, from his bedroom and showed it to him. Mr. Forehand also reported that Gould described additional weapons that he owned. . . . With this information and the officers' knowledge that the defendant was a convicted felon, the officers should have obtained a search warrant for the mobile home and specifically for the master bedroom. Their failure to obtain a search warrant reduces the weight of the governmental interest in

9

Government has a significant interest in investigating credible complaints indicating that individuals such as Gould intend to commit murder and destroy property. We question whether the "knock and talk" strategy can be safely carried out in practice if officers are not allowed to conduct a protective sweep when they reasonably apprehend danger in order to avoid being ambushed.

Secondly and most importantly, while no Supreme Court case directly conflicts with this court's holding in *Wilson,* the touchstone of the Supreme Court's Fourth Amendment jurisprudence has been reasonableness. The reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed to promote legitimate governmental interests. *United States v. Knights*, 122 S.Ct. 587, 591 (2001). Reasonableness is a much more nuanced standard than the rigid rule adopted in *Wilson*.

Indeed, this court in *Wilson* did not employ a reasonableness test, but instead relied on the Court's opening statement in *Buie* that "a protective sweep is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police

conducting a 'protective sweep' of the master bedroom, because a 'protective sweep' would have been unnecessary if the search were authorized by a search warrant."

However, the undisputed evidence is that Forehand did not say anything about the defendant having firearms or there being such at the trailer until, *after* the defendant's arrest, Forehand was further questioned at the trailer.

10

officers or others."  However, the sweep in *Buie was* indisputably incident to an arrest so the question of whether there could ever exist conditions that would justify a protective sweep not incident to an arrest was not before the Court.  As such, this opening sentence in *Buie* might properly be regarded as doing no more than describing the issue then before the Supreme Court.  *Cf. Knights* at 590 (noting that it is "dubious logic" to suggest that "an opinion upholding the constitutionality of a particular search implicitly holds unconstitutional any search that is not like it").

This conclusion is strengthened by *Terry* where the Court upheld a stop and frisk search of a pedestrian despite agreeing with the factual finding of the lower court that the search was not incident to the arrest because, before the weapons and other evidence of the search was uncovered, the officers neither had probable cause to arrest the individual or intended to do so. *Terry v. Ohio*, 88 S.Ct. 1868, 1883 (1968*).*  The Court concluded, "Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Id.*  The Court contrasted the limited type of search it approved in *Terry* with a more far-reaching

11

traditional search:

> "The protective search for weapons, on the other hand, constitutes a brief, though far from inconsiderable, intrusion upon the sanctity of the person. It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest. Moreover, a perfectly reasonable apprehension of danger may arise long before the officer is possessed of adequate information to justify taking a person into custody for the purpose of prosecuting him for a crime." *Id.* at 1882-83.

Although *Terry* involved the search of a pedestrian's person rather than a search of the home, the overarching principle is that "the touchstone of the Fourth Amendment is reasonableness." *Knights* at 591. As such, the difference in the expectation of privacy on the part the pedestrian and of a person in their home would simply be a factor to consider in striking the proper balance between the rights of the individual and effective law enforcement.[5] This suggests that, rather than a rigid requirement that a protective sweep in the home be incident to an arrest, courts should consider a range of factors in balancing the individual right to privacy with legitimate law enforcement objectives.

Another relevant factor ought to be the reasonable likelihood of a violent reaction by the defendant and, relatedly, the officers' reasonable apprehension of danger either to themselves or

---

[5]We note that *Knights* involved a search of the defendant's apartment.

12

to others who may be on the premises.  One fact that should inform officers and courts in making this evaluation is the nature of the crimes being investigated and whether the subject of the protective sweep has a criminal record, particularly a violent one.  Unlike *Wilson* where the subject of the protective sweep was suspected of writing fraudulent checks, the officers had been informed that Gould was planning to commit murders.  Furthermore, officers were aware of Gould's violent criminal record.  Given these circumstances, the officers were reasonably concerned that, after being voluntarily admitted into the trailer by Cabral, they could be ambushed by Gould.  Their concern could reasonably have heightened after Cabral told them Gould was sleeping, but they saw that he was not in his bed.

Finally, another factor in the reasonableness determination should be the extent and intrusiveness of the search.  We recognize that a protective sweep must, by definition, be "quick and limited" and "confined to a cursory visual inspection of those places in which a person might be hiding."  *Buie*, 110 S.Ct. 1093, 1094.  A cursory check is a superficial one, limited in both scope and duration. *Florida v. Royer*, 103 S.Ct. 1319, 1325 (1983).  It is rapidly undertaken to look for people who might pose a threat, with little attention paid to detail.  *Id.*  "The [Fourth] Amendment's protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a

13

warrantless search:  the search must be limited in scope to that which is justified by the particular purposes served by the exception."  *Id.*

Unlike the other factors which must be balanced, there is a hard and fast requirement that a protective sweep be cursory and "quick and limited,"[6] but undoubtedly some searches are quicker and more cursory than others.  Once a protective sweep meets this basic requirement, the more cursory, expeditious, and limited it is within that permissible continuum, the more likely the balance of factors will weigh in favor of finding it to be reasonable.  It is particularly significant, in our view, whether the protective sweep, as is the case here, promptly concluded once the potential danger ceased to exist.

We note that other circuits have adopted a reasonableness approach that does not *per se* invalidate all protective sweeps not incident to an arrest.  In *United States v. Patrick*, 959 F.2d 991 (D.C. Cir. 1992), the D.C. Circuit upheld a protective sweep of an apartment in a narcotics case in which the search warrant had expired and someone living with the defendant allowed police in to the apartment, but did not expressly purport to consent to the search of the defendant's bedroom where the narcotics were ultimately found.  The court did not explicitly address whether the

---

[6]There is likewise doubtless a hard and fast requirement that the officers' presence on the premises when the "protective sweep" is commenced not be inconsistent with the defendant's Fourth Amendment rights.

14

protective sweep was incident to an arrest, but the drug and weapon convictions were entirely based on evidence found in the search of the bedroom and there was no arrest warrant but only an expired search warrant at the time of the protective sweep. The court held:

> "Once the police were lawfully on the premises, they were authorized to conduct a protective sweep based on their reasonable belief that one of its inhabitants was trafficking in narcotics. *Cf. Maryland v. Buie*, 110 S.Ct. 1093 (1990) (during execution of arrest warrant, police authorized to do protective sweep of spaces in house where person posing danger to police could hide and launch attack if based on reasonable belief that area swept holds such person). We think the holding in *Buie*, notwithstanding the search there was conducted pursuant to a warrant and not consent, supports the police search here. Accordingly, the police validly entered the bedroom when they looked through the open door and saw Patrick inside." *Patrick*, 959 F.2d at 996.

The *Patrick* opinion is not cited in *Wilson*.[7]

In *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001), the Sixth Circuit also upheld a protective sweep (absent a valid warrant) that was not incident to an arrest. The court explained:

> "Taylor argues that a protective sweep is authorized only when it is made incident to a lawful arrest. Therefore, he contends, because Hill had not been arrested when the officers made their cursory search of Taylor's apartment, the sweep was *per se* invalid. In contrast, the government argues that while *Buie* and *Briggs* were each decided in the factual context of officers' making an arrest, nothing in the those opinions indicates that an arrest is a mandatory prerequisite for conducting a protective sweep of the area. The

---

[7]This suggests that the *Wilson* panel was likely unaware of *Patrick* and hence would not have followed our court's policy that a panel opinion which would create a conflict between circuits must be precirculated to all active judges.

15

> government further points out that the *Buie* decision was based upon the reasoning set forth in the Supreme Court's earlier decisions in *Terry* and *Long*, both of which were investigative stop cases.
>
> We believe the government presents the more compelling argument. Once an officer has probable cause to believe contraband is present, he must obtain a search warrant before he can proceed to search the premises. *See Segura v. United States*, 104 S.Ct. 3380 (1984). However, the Supreme Court has held that because evidence may be removed or destroyed before a warrant can be obtained, an officer does not violate the Fourth Amendment by securing the area to be searched and waiting until a warrant is obtained. (footnote and citation omitted). We think that it follows logically that the principle enunciated in *Buie* with regard to officers making an arrest--that the police may conduct a limited protective sweep to ensure the safety of those officers--applies with equal force to an officer left behind to secure the premises while a warrant to search those premises is obtained. We emphasize, however, that the purpose of such a protective sweep is to protect the safety of the officer who remains at the scene, and for that reason, the sweep must be limited to a cursory search of the premises for the purpose of finding persons hidden there who would threaten the officer's safety." *Taylor*, 248 F.3d at 513-14.

Finally, as a practical matter, we believe that the need for police officers to protect themselves by conducting protective sweeps can be equally acute regardless of whether the sweep is incident to an arrest.

In our view, this court would be well advised to consider en banc whether a reasonableness approach that balances a variety of relevant factors is preferable to the holding in *Wilson.* Nevertheless, this panel is bound to follow *Wilson* and therefore upholds the district court's determination that the evidence at issue here was not obtained pursuant to valid protective sweep.

16

C. Good Faith Exception to Exclusionary Rule

Given that the protective sweep exception is inapplicable, the Government argues, in the alternative, that the officers' actions in this case meet the good faith exception to the exclusionary rule. This contention was first raised in the Government's motion for reconsideration of the district court's order granting the motion to suppress. In denying the motion to reconsider, the district court noted that there was no evidentiary hearing as to good faith, and stated that "this court cannot make a finding on whether the officers were in good faith or not." However, the court went on to discuss the law and rule that "the good faith exception to the exclusionary rule is inapplicable to this case."

The primary purpose of the exclusionary rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 94 S.Ct. 613, 619-20 (1974). In *United States v. Williams*, 622 F.2d 830, 840 (5th Cir. 1980) (en banc), *cert. denied*, 101 S.Ct. 946 (1981), this court stated that "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." We reaffirmed that principle in *United States v. DeLeon-Reyna*, 930 F.3d 396, 400-01 (5th Cir. 1991) (en banc).

17

Several types of good faith exceptions are recognized. An officer may make a judgmental error, i.e. a "good faith mistake," concerning the existence of facts sufficient to constitute the requisite probable cause or reasonable suspicion. *See United States v. Leon*, 104 S.Ct. 3405 (1984); *DeLeon Reyna* at 401. An officer may also act based on an objectively reasonable mistake of law. *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999); *DeLeon Reyna* at 401. Further, an officer may generally rely upon a statute which is later ruled unconstitutional, a warrant which is later invalidated, or a court precedent which is later overruled. *Williams*.

In *United States v. Whaley*, 781 F.2d 417, 418-19 (5th Cir. 1986), this court considered a case where officers could have obtained a search warrant based on the appearance of marijuana outside and in plain view, but instead violated the Fourth Amendment by removing the plants without a warrant and absent exigent circumstances. The government asserted a good faith exception because the officers believed they could enter the land to take the marijuana in plain view without a search warrant. *Id.* at 421. In rejecting the argument, this court stated that:

> "[t]he exception is not devised for the unlawful conduct of all officers who mean well. The good faith belief must be grounded in objective reasonableness. The mistake of an operative fact or an error of technical nature may not bar admission of evidence. The mistake here was on a basic point of established law. To extend the exception so far as to allow evidence of a clearly unlawful warrantless search of residential property would

18

put too great a premium on ignorance of the law and would virtually terminate the exclusionary rule. This is neither our wish nor our prerogative." *Id.* (citations omitted).

The Government asserts that a number of facts in the record support application of the good faith exception. For example, the officers looked only in places where a human could hide, they did not seize the guns in the closet upon sight, and they discontinued their sweep when they became aware the defendant had gone outside. Each of these facts, along with the others stated, would support the contention that the officers limited their search to a protective sweep, and thus their action would be legal if a protective sweep were allowed when not incident to an arrest. However, none of these facts falls within the ambit of the good faith exception. Ultimately, to the extent the officers made a mistake of law, it could not have been grounded in objective reasonableness, because it was clearly contrary to *Wilson*, which was then and had been for some six years the established law of this circuit and had (and has) not been limited or narrowed. Thus, we cannot conclude that the officers could have reasonably thought a protective sweep not incident to an arrest would be lawful.[8]

### Conclusion

---

[8]It might be arguable that the officers made a "good faith mistake" of fact in believing that Cabral, acting with either actual or apparent authority, had given them valid consent to search Gould's bedroom. However, the Government does not assert this argument on appeal and this court will not consider nonjurisdictional issues not raised on appeal. *United States v. Bigler*, 817 F.2d 1139, 1140 (5th Cir. 1987).

19

For the foregoing reasons, the district court's suppression of the evidence at issue is

AFFIRMED.