609 S.E.2d 74

### David Lee MOORE

v.

### COMMONWEALTH of Virginia.

**Record No. 2648–03–1.**

Court of Appeals of Virginia,
Chesapeake.

Feb. 22, 2005.

148

S. Jane Chittom, Appellate Defender (Virginia Indigent Defense Commission, on briefs), for appellant.

Susan L. Parrish, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present: FITZPATRICK, C.J., ELDER, J., and ANNUNZIATA, S.J.*

ELDER, Judge.

David Lee Moore (appellant) appeals his conviction under Code § 18.2–248 for possession of cocaine with intent to distribute. Appellant argues on appeal that his conviction should be reversed because the trial court erred in denying his motion to suppress. Appellant's motion to suppress was based on the failure of police to issue a summons instead of effecting an arrest, pursuant to Code § 19.2–74(A)(1), when they stopped his car and determined he was driving on a suspended license. For the following reasons, we reverse.

## I.

## BACKGROUND

On appeal, we review the evidence, and all reasonable inferences that can be drawn from the evidence, in a light most favorable to the Commonwealth as the party prevailing below. *Garcia v. Commonwealth,* 40 Va.App. 184, 189, 578 S.E.2d 97, 99 (2003). So viewed, the evidence establishes that on February 20, 2003, Detective B.J. Karpowski overheard a conversation on his police radio about a man, whose nickname was "Chubs," driving a car in the area. Drawing on his knowledge that a man nicknamed Chubs had just been released from a federal penitentiary and was driving on a suspended license, Karpowski radioed other officers and told them to stop Chubs.

Detectives Mark Anthony and T. McAndrew responded to Karpowski's radio message and stopped appellant, whom Anthony knew was nicknamed "Chubs." Although appellant was not the man Karpowski referred to in his radio message, the

---

* Judge Annunziata participated in the hearing and decision of this case prior to the effective date of her retirement on December 31, 2004 and thereafter by her designation as a senior judge pursuant to Code § 17.1–401.

detectives determined that he was driving on a suspended license.

Appellant was alone in the car with a dog the detectives described as "very upset with [the detectives' presence]" and "big enough" that the officers "didn't want to get too close to it." After confirming that appellant's license was suspended, Detectives Anthony and McAndrew arrested appellant, handcuffed him, and placed him in Detective McAndrew's vehicle. Due to a miscommunication, the detectives did not search appellant at that time. The detectives then called animal control and requested that they pick up the dog. Forty-five minutes later, after animal control arrived, the detectives drove to a hotel room where appellant had been staying. There, McAndrews searched appellant's person and recovered crack cocaine from his jacket and $516 in cash from his pants pocket.

When asked at the hearing why appellant was arrested, Detective Anthony stated, "Just our prerogative, we chose to effect an arrest. Additionally, subsequent to that traffic stop, narcotics were eventually recovered." When asked why they did not release appellant on a summons, Anthony replied, "Well, we were still in the middle of the investigation; the investigation was not complete yet. We were, pursuant to the traffic stop, . . . also conducting a narcotics investigation."

Appellant moved to suppress on statutory and constitutional grounds, arguing the search of his person was tainted by the illegal arrest that preceded it. The arrest was illegal, he argued, because the detectives failed to release him on a summons pursuant to Code § 19.2–74(A)(1). The trial court denied the motion to suppress. Citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), the trial court held the arrest violated neither the Fourth Amendment nor Virginia law permitting an officer to arrest for a misdemeanor committed in his presence. After hearing additional evidence, the trial court convicted appellant and sentenced him to five years in prison, one year and six months suspended. This appeal followed.

## II.

## ANALYSIS

Code § 19.2–74 provides, in pertinent part:

A. 1. Whenever any person is detained by or is in the custody of an arresting officer for any violation committed in such officer's presence which offense is a violation of any county, city or town ordinance or of any provision of this Code punishable as a Class 1 or Class 2 misdemeanor or any other misdemeanor for which he may receive a jail sentence, except as otherwise provided in Title 46.2, or § 18.2–266, or an arrest on a warrant charging an offense for which a summons may be issued, and when specifically authorized by the judicial officer issuing the warrant, the arresting officer shall take the name and address of such person and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. Upon the giving by such person of his written promise to appear at such time and place, the officer shall forthwith release him from custody. However, if any such person shall fail or refuse to discontinue the unlawful act, the officer may proceed according to the provisions of § 19.2–82.

Anything in this section to the contrary notwithstanding, if any person is believed by the arresting officer to be likely to disregard a summons issued under the provisions of this subsection, or if any person is reasonably believed by the arresting officer to be likely to cause harm to himself or to any other person, a magistrate or other issuing authority having jurisdiction shall proceed according to the provisions of § 19.2–82.

■ Driving while one's license is suspended is a Class 1 misdemeanor. Code § 46.2–301(C). Therefore, in the instant case, Code § 19.2–74 required the detectives to issue appellant a summons and release him from custody upon securing his promise to appear unless: (1) appellant's offense was drunk driving under Code § 18.2–266 or a specifically exempted offense under Title 46.2, (2) appellant failed or refused to

discontinue the unlawful act, (3) the detectives believed appellant was likely to disregard the summons, or (4) the detectives reasonably believed appellant was likely to cause harm to himself or to another person. Code § 19.2–74; *see also West v. Commonwealth,* 36 Va.App. 237, 240–42, 549 S.E.2d 605, 606–07 (2001). Absent proof of facts supporting application of one of these exceptions, a full custodial arrest, necessary to justify a search of the individual incident to arrest, was not permitted under the statute.

As the United States Supreme Court explained in *Knowles v. Iowa,* 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), upon which appellant relies, the Fourth Amendment also places limitations on searches conducted incident to issuance of a citation. In *Knowles,* 525 U.S. at 114, 119 S.Ct. at 486, an Iowa police officer stopped Knowles for speeding and, as permitted by statute, exercised his discretion to issue Knowles a citation rather than arrest him. After issuing the citation, the officer conducted a full search of Knowles's car, found a bag of marijuana and a "pot pipe" under the driver's seat, and arrested Knowles for offenses related to his possession of that contraband. *Id.* The Supreme Court considered whether conducting a full search of Knowles's vehicle pursuant to the issuance of a traffic citation was consistent with the Fourth Amendment and concluded that it was not. *Id.*

According to the Supreme Court, "two historical rationales [exist] for the 'search incident to arrest' exception [to the Fourth Amendment]: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Id.* at 116, 119 S.Ct. at 487. The Court determined in *Knowles* that neither rationale was present and refused to extend the "search-incident-to-arrest" exception to permit searches incident to the issuance of citations. *Id.* at 118–19, 119 S.Ct. at 488. The Court held that "officers have other, independent bases to search for weapons and protect themselves from danger," including the ability to "perform a 'patdown' of [the detainee] upon reasonable suspicion that [he] may be armed and dangerous." *Id.* at 117–18,

119 S.Ct. at 488 (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

The Virginia Supreme Court addressed a similar issue in *Lovelace v. Commonwealth,* 258 Va. 588, 522 S.E.2d 856 (1999). Lovelace and several other men were drinking beer while standing in the parking lot of a convenience store known to be an "open air drug market." *Id.* at 591, 522 S.E.2d at 857. Officers in the area saw a beer bottle fly through the air but did not see who threw it. *Id.* One officer testified that the bottle came from the area where Lovelace was standing. *Id.* Lovelace and the other men were ordered to lie face down on the ground. *Id.* An officer approached Lovelace and asked him his name. *Id.* Lovelace identified himself but remained silent when the officer asked him whether he had any drugs or guns. *Id.* The officer proceeded to "pat down" Lovelace. *Id.* In Lovelace's pocket, he felt something like a plastic bag with lumps in it, but he did not know what was in the bag. *Id.* at 591–92, 522 S.E.2d at 857. The officer nevertheless reached in Lovelace's pocket and retrieved the bag. *Id.* at 592, 522 S.E.2d at 857. The substance was later identified as crack cocaine. *Id.*

In reversing Lovelace's conviction, the Court said:

*Knowles* is applicable.... [T]he initial reason for detaining Lovelace was his alleged commission of a Class 4 misdemeanor for which the issuance of a summons was authorized under Code § 19.2–74(A)(2). Only if Lovelace had failed or refused to discontinue the unlawful act could the officer have effected a custodial arrest and taken the defendant before a magistrate. Code § 19.2–74(A)(2). However, there is no evidence in the record that Lovelace acted in such a manner. The fact that the officers could have issued only a summons for the alcohol-related offense also negates the Commonwealth's argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed [Deputy] Womack to search him. After *Knowles,* an "arrest" that is effected by issuing a citation or summons rather than taking the suspect into custody does not, by itself, justify a full field-type search.

Nor do we believe that Code § 19.2–74(A)(2) contemplates a custodial situation equivalent to an actual custodial arrest. Under that statute, a suspect is detained, or in the custody of the police officer, only long enough for the officer to take down the name and address of the person and issue a summons. One of the reasons that the *Knowles* Court did not extend the [*United States v.*] *Robinson*[414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)] "bright-line rule" to a "search incident to citation" was because the duration of the encounter between a police officer and a defendant is "relatively brief" when the officer issues a citation. Thus, the threat to officer safety is less.

*Id.* at 596, 522 S.E.2d at 860; *see also West,* 36 Va.App. 237, 549 S.E.2d 605; *Rhodes v. Commonwealth,* 29 Va.App. 641, 513 S.E.2d 904 (1999) (*en banc* ).

The United States Supreme Court subsequently revisited *Knowles,* holding in *Atwater,* 532 U.S. at 354, 121 S.Ct. at 1557, that an officer effecting a custodial arrest for a misdemeanor traffic offense may search the arrestee without violating the Fourth Amendment. However, we noted in *West* that the Court reached this conclusion in the context of a state statute that expressly authorized a custodial arrest in such circumstances and gave the officer the discretion to issue a summons in lieu of effecting an arrest. *West,* 36 Va.App. at 242 n. 2, 549 S.E.2d at 607 n. 2. Because the statute at issue in *Atwater* was significantly different from Virginia's, we held in *West* that the ruling in *Atwater* "does not apply in this case." *Id.* We then applied *Knowles* to hold unconstitutional the search of West conducted while he was handcuffed and under arrest for a citation-only offense. *Id.* at 240–42, 549 S.E.2d at 606–07. Thus, we concluded in *West* that the holding in *Atwater* had no effect on the holding of *Knowles* that an officer who conducts a search pursuant to issuance of a summons violates the Fourth Amendment. *See id. Atwater* did not address the impact of the Fourth Amendment on a search incident to a custodial arrest for a misdemeanor offense effected in violation of a state statute authorizing only the issuance of a summons.

■■■ Here, rather than searching pursuant to issuance of a summons as in *Knowles*, the detectives arrested appellant and searched him incident to that arrest. Appellant contends that arrest violated Code § 19.2–74 and the United States and Virginia Constitutions and, thus, that the fruits of the accompanying search must be suppressed. Ordinarily, a statutory violation does not require the suppression of evidence obtained as a result of that violation " 'absent an express statutory provision for suppression.' " *Janis v. Commonwealth*, 22 Va. App. 646, 651, 472 S.E.2d 649, 652 (quoting *Troncoso v. Commonwealth*, 12 Va.App. 942, 944, 407 S.E.2d 349, 350 (1991)), *aff'd on reh'g en banc*, 23 Va.App. 696, 479 S.E.2d 534 (1996). However, in light of the Supreme Court's declaration in *Knowles* that the Fourth Amendment does not permit a search incident to issuance of a citation, we now conclude that a search conducted pursuant to a custodial arrest that violates Code § 19.2–74 constitutes, in effect, a search incident to issuance of a citation in violation of the Fourth Amendment.[1] *Knowles* holds that if an officer, exercising his discretion as permitted by statute, chooses only to issue a citation rather

---

1. The Virginia Supreme Court's recent language in an order affirming this Court's judgment in *Hunt v. Commonwealth*, 42 Va.App. 537, 592 S.E.2d 789 (2004) (*en banc* ) (affirmed without opinion by an evenly divided court), neither compels nor supports a different result. *Hunt v. Commonwealth*, No. 040614 (Va. Oct. 8, 2004). The Supreme Court held that Hunt did not preserve for appeal his claim that the search at issue violated his constitutional rights and affirmed based *solely* on his statutory claims:

 [Defendant's argument] was inadequate to preserve the *constitutional* issue for appeal.

 The Court also concludes that the Court of Appeals did not err in affirming the circuit court's rejection of the defendant's *statutory* arguments in support of his motion to suppress. Assuming, without deciding, that a violation of Code § 19.2–74 occurred, the defendant failed to establish that he was entitled to suppression of the evidence obtained as a result of the search. In the absence of a violation of a defendant's constitutional rights, the remedy of exclusion of evidence is not available for a statutory violation.

 *Hunt*, slip op. at 1–2 (citation omitted) (emphasis added). Thus, the Supreme Court's order in *Hunt* actually supports our conclusion that a statutory violation rising to the level of a constitutional violation requires suppression.

than to effect a full arrest, a search incident to issuance of that citation is unconstitutional. We see no reason to reach a different result when it is the legislature that has concluded that, absent additional facts, only a citation should be issued for a particular offense.

Although *Knowles* did not expressly address this scenario, neither *Knowles* nor *Atwater* precludes this approach, and we hold that exclusion, under the facts of appellant's case, is a logical and necessary extension of the decision in *Knowles*. The Virginia Supreme Court intimated as much in *Lovelace* when it observed "The fact that the officers could have issued only a summons for the alcohol-related offense [under the relevant state statute] also negates the Commonwealth's argument that the existence of probable cause to charge Lovelace with drinking an alcoholic beverage in public allowed [Deputy] Womack to search him." 258 Va. at 596, 522 S.E.2d at 860. Where a statute authorizes only the issuance of a citation for certain minor offenses, pursuant to which a full search would be unconstitutional under *Knowles*, to hold admissible the fruits of a search, conducted by an officer who effects a full custodial arrest under circumstances clearly not permitted by statute, would yield inconsistent results and would be fraught with the potential for abuse. Any officer so desiring could intentionally effect a full custodial arrest contrary to clearly established state law in order to avoid running afoul of *Knowles*, thereby placing the search beyond the power of the court to review. *Cf. Crosby v. Commonwealth*, 6 Va.App. 193, 200–01 & n. 9, 367 S.E.2d 730, 735 & n. 9 (1988) (holding existence of probable cause and exigent circumstances may justify warrantless entry of residence so long as police are "not . . . responsible for creating their own exigencies").

 We recognize that, under appropriate circumstances, the good faith exception to the exclusionary rule permits the admission of evidence obtained by an officer mistaken about the law. *See, e.g., United States v. Gould*, 326 F.3d 651, 659–60 (5th Cir.2003). However, the burden rests on the government to prove good faith. *See, e.g., United States v. Brunette*,

256 F.3d 14, 17 (1st Cir.2001). Here, the Commonwealth made no argument that the arresting officers misperceived the law. Further,

> the exception is not devised for the unlawful conduct of *all* officers who mean well. The good faith belief must be grounded in *objective* reasonableness. The mistake of an operative fact or an error of technical nature may not bar admission of evidence. [Circumstances are different where the mistake is] on a basic point of established law. To extend the exception so far as to allow evidence of a clearly unlawful warrantless search ... would put too great a premium on ignorance of the law and would virtually terminate the exclusionary rule.

*United States v. Whaley,* 781 F.2d 417, 421 (5th Cir.1986) (citations omitted) (emphases added). When Detectives Anthony and McAndrew encountered appellant on February 20, 2003, both the relevant provisions of Code § 19.2–74 and the Supreme Court's 1998 holding in *Knowles* were established law, and their misapplication of that law was not objectively reasonable.

■ Applying these principles to the facts of this case, we hold the search was unconstitutional because the Code made clear that, absent additional facts, the detectives were required to issue appellant a summons for the misdemeanor offense of driving on a suspended license. *See* Code § 19.2–74; Code § 46.2–301 (providing that driving while one's license is suspended is a Class 1 misdemeanor). The Commonwealth argues only that the police had "reason to believe that the unlawful activity would not cease had they released [appellant] on a summons" because appellant was alone in the car with an animal "that could not be easily contained" and because "no one was available to take [appellant] or his dog from the scene." The Commonwealth thus argues that Code § 19.2–74 permits an arrest when the officers had "reason to believe that the unlawful activity would not cease had they released [appellant] on a summons." The Commonwealth, however, misapprehends the appropriate question under the statute. The trial court must determine whether the facts

establish that appellant failed or refused to discontinue the unlawful act; whether the police had reason *to believe* appellant would fail or refuse to discontinue the unlawful act is immaterial. *Cf. Fox v. Commonwealth,* 43 Va.App. 446, 449–50, 598 S.E.2d 770, 771 (2004) (discussing the standard to be applied in evaluating the applicability of exceptions (3) and (4)). That appellant was alone in the car with his dog and no one else was present to transport him from the scene do not establish that he failed or refused to discontinue the unlawful activity. No other evidence bearing on the question was introduced, and the trial court made no finding that appellant attempted to drive his car again after the initial stop.[2] *See Lovelace,* 258 Va. at 596, 522 S.E.2d at 860 ("Only if Lovelace had failed or refused to discontinue the unlawful act could the officer have effected a custodial arrest and taken the defendant before a magistrate. However, there is no evidence in the record that Lovelace acted in such a manner." (citation omitted)).

We dealt with similar facts in *West.* In that case, a police officer observed West execute a turn in his car without using a signal. *West,* 36 Va.App. at 238, 549 S.E.2d at 605. West subsequently parked his car, at which time the officer approached and asked to see West's license. *Id.* West informed him that he did not have a license, and the officer confirmed he was not licensed to drive. *Id.* He then handcuffed West, told him he was under arrest "for driving without a license," and began filling out a summons. *Id.* While filling out the summons, the officer noticed a bulge in West's shoe. *Id.* The officer searched the shoe and recovered crack cocaine. *Id.* We held that the cocaine should have been suppressed because the officer did not have authority to conduct the search where the

---

2. The trial court denied the motion to suppress on the ground that the United States Supreme Court's decision in *Atwater* permits police officers to make an arrest for a misdemeanor traffic offense committed in their presence. However, as discussed *supra* in the text, we have held that *Atwater* is inapplicable to a case such as the instant one because Code § 19.2–74 does not provide the officer with discretion to make an arrest, as did the statute at issue in *Atwater. See West,* 36 Va.App. at 242 n. 2, 549 S.E.2d at 607 n. 2.

evidence failed to establish that one of the exceptions to Code § 19.2–74 applied. *Id.* at 242, 549 S.E.2d at 607. Specifically addressing the failure of the evidence to establish the applicability of the second exception, we stated that West "stopped the car before [the officer] approached him, and [the officer] had already started the paperwork to have the car towed. Therefore, [West] ceased the unlawful behavior." *Id.* at 240, 549 S.E.2d at 606. Because West had ceased the unlawful behavior and because there was no evidence that he had failed or "refused to discontinue his unlawful acts," we held that the second exception did not apply and that his detention was illegal. *Id.* at 242, 549 S.E.2d at 607.

Here, appellant ceased the unlawful activity of driving on a suspended license when the detectives stopped him, and no evidence was introduced establishing that he failed or refused to discontinue the unlawful act. We conclude that the evidence in the instant case fails to establish the applicability of an exception to Code § 19.2–74(A)(1). Accordingly, appellant's arrest violated Code § 19.2–74, under which only issuance of a citation was authorized, and the evidence obtained as a result of the search, which was, in effect, conducted pursuant to issuance of a citation, should have been suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 485–86, 83 S.Ct. 407, 417–16, 9 L.Ed.2d 441 (1963). For the foregoing reasons, we reverse and dismiss the indictment.

*Reversed and dismissed.*

ANNUNZIATA, Judge, dissenting.

I agree with the majority that Moore was arrested in violation of Code § 19.2–74. However, I cannot concur in the judgment to reverse. I would hold that, because Moore was placed under full custodial arrest supported by probable cause to believe a criminal offense was committed, Moore's arrest did not violate the United States Constitution. The exclusionary rule therefore does not apply, and Moore's conviction should be affirmed.

The evidence in this case establishes beyond dispute that Moore was placed under a full custodial arrest supported by probable cause that a criminal offense had been committed. After stopping Moore in his vehicle, an officer on the scene determined that Moore's driving license was suspended. Thus, the police had probable cause to believe that Moore was driving on a suspended license, a misdemeanor violation of Code § 46.2–301(C). Moore was subsequently placed in handcuffs, made to wait forty-five minutes by his car until animal control arrived, and then transported to his hotel room.

## I.

Because Moore's arrest was based on probable cause that he committed the offense of driving on a suspended license, the arrest did not violate the Fourth Amendment to the United States Constitution. *See Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 1557, 149 L.Ed.2d 549 (2001) (holding that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, *without violating the Fourth Amendment,* arrest the offender" (emphasis added)); *see also Penn v. Commonwealth,* 13 Va.App. 399, 407, 412 S.E.2d 189, 194 (1991) (holding that "probable cause is the standard for testing the constitutional validity of an arrest").

Furthermore, it is clear that the Fourth Amendment to the United States Constitution is not violated as a result of a state law violation. The principle that state law is not relevant to a determination of whether the Fourth Amendment is violated, and thus whether the concomitant exclusionary rule is implicated, is firmly rooted in jurisprudence. *See California v. Greenwood,* 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30 (1988) (holding that evidence obtained in violation of California law should not have been excluded under the Fourth Amendment because the Court has "never intimated ... that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs"); *see also Knight v. Jacobson,* 300 F.3d 1272, 1276 (11th Cir.2002) (holding that "[t]here

is no federal right not to be arrested in violation of state law"); *United States v. Van Metre,* 150 F.3d 339, 347 (4th Cir.1998) (holding that whether the arrest was "conducted in accordance with Tennessee state law is irrelevant to our analysis" of whether to suppress the evidence pursuant to the federal exclusionary rule); *United States v. Bell,* 54 F.3d 502, 504 (8th Cir.1995) (holding the lower court erred by looking to state law to determine that the arrest was invalid, and thus excluding the evidence, because "[a]n arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause"); *United States v. Wright,* 16 F.3d 1429, 1437 (6th Cir.1994) (holding that "[t]he fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended ... because the exclusionary rule is only concerned with deterring Constitutional violations"); *United States v. Walker,* 960 F.2d 409, 415 (5th Cir.1992) (holding that "[w]hether the Fourth Amendment has been violated is determined *solely* by looking to federal law on the subject" (emphasis added)); *Anderson v. Haas,* 341 F.2d 497, 499 (3d Cir.1965) (evaluating civil rights claim and holding that whether an arrest violates the federal constitution requires reference to federal law and that it is "immaterial whether [the police officer's] conduct is legal or illegal as a matter of state law" (internal quotations omitted)); *Horne v. Commonwealth,* 230 Va. 512, 519, 339 S.E.2d 186, 191 (1986); *Penn,* 13 Va.App. at 406, 412 S.E.2d at 194.

Moreover, this Court has held that exclusion is not an appropriate remedy when a state statute is violated " 'absent an express statutory provision for suppression.' " *Janis v. Commonwealth,* 22 Va.App. 646, 651, 472 S.E.2d 649, 652 (quoting *Troncoso v. Commonwealth,* 12 Va.App. 942, 944, 407 S.E.2d 349, 350 (1991)), *aff'd on reh'g en banc,* 23 Va.App. 696, 479 S.E.2d 534 (1996).[3] Code § 19.2–74 does not direct that evidence obtained in violation of its provisions must be sup-

---

3. Virginia has historically looked to the General Assembly to adopt legislative measures as a means of protecting constitutional rights under both the federal and state constitutions. *See, e.g., Hall v. Com-*

pressed. I would therefore find that the exclusion of evidence in this case is without legal support.

## II.

That Moore was arrested based on probable cause is not a factor in the majority's calculus. Instead, the majority concludes that Moore was, "in effect," searched incident to a citation because Code § 19.2–74 does not permit a full custodial arrest. It cites *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), in support of the fiction it creates and does so in order to avail itself of the *Knowles* holding. In *Knowles*, a case originating in Iowa, a state statute gave the police the discretionary authority to either arrest or issue a citation for the minor traffic violation of speeding. *Id.* at 115, 119 S.Ct. at 486. The Supreme Court held that a search conducted incident to the issuance of a citation violates the United States Constitution. *Id.* at 114, 119 S.Ct. at 486. The majority in this case concludes that, because Code § 19.2–74 does not authorize an arrest and limits police discretion to the issuance of a summons, the search in this case can only be denominated as incident to the issuance of a citation, in which

---

*monwealth*, 138 Va. 727, 733–34, 121 S.E. 154, 155–56 (1924); *Janis*, 22 Va.App. at 651, 472 S.E.2d at 652. In *Hunt v. Commonwealth*, No. 040614, slip. op. at 1 (Va. Oct. 8, 2004), discussed *infra* in Part II, the Supreme Court apparently did not have the occasion to consider the policy implications of this legal principle and adopt a construction that gives import to the legislative purpose of the statue. *See Bazemore v. Commonwealth*, 42 Va.App. 203, 226, 590 S.E.2d 602, 613 (2004). Among the more ostensible and troubling policy issues engendered by violations of Code § 19.2–74, and which inhere in finding that evidence seized in violation of state law may nonetheless be used to convict, are the absence of a remedy for such violations and the effective nullification of the statute's mandate. It is not difficult to see that, in the absence of an exclusionary rule, an officer desiring to conduct a search could effect a custodial arrest in clear violation of state law and place the fruits of that search beyond review. Such a result divests Code § 19.2–74 of import and effectiveness, creates a positive incentive for police to disregard the legislative mandate of Code § 19.2–74, and gives little effect to the legislature's "expressed ... preference for the issuance of a summons in lieu of an arrest warrant for most misdemeanor cases by enacting Code § 19.2–74." *West v. Commonwealth*, 36 Va.App. 237, 239, 549 S.E.2d 605, 605 (2001).

case the *Knowles* holding would require exclusion of the seized evidence. I cannot concur in this reasoning.

It is undeniable that the Supreme Court in *Knowles* noted the Iowa statutory provision permitting a police officer to issue a citation for speeding rather than effecting an arrest. *Id.* at 115, 119 S.Ct. at 486. However, the majority places undue reliance on this factual distinction because the statutory authority to arrest had no bearing whatsoever on the decision. *See id.* at 114, 119 S.Ct. at 486. The Supreme Court confined itself to determining "whether [a search incident to a citation] authorizes the officer, consistently with the Fourth Amendment, to conduct a full search of the car," *id.,* and the question was answered in the negative. *Id.* ("We answer this question 'no.' "). A careful reading of *Knowles* discloses not a single reference to the discretionary authority granted to the Iowa police force to arrest as a reason for the Supreme Court's conclusions. Rather, the critical fact for the Supreme Court was that the defendant *was not arrested* and, because the defendant was not arrested, that the "historic rationales" underlying the search incident to arrest exception were not present. *Id.* at 116–17, 119 S.Ct. at 487 ("The threat to officer safety from issuing a traffic citation, however, is a good deal less than in the case of a *custodial arrest.*" (Emphasis added)). The Supreme Court's reasoning makes abundantly clear that the search incident to arrest exception applies *only* when an actual arrest takes place because *only* then are the historic rationales underlying the exception present. This reading of *Knowles* comports not only with the language of the opinion itself but also with prior Supreme Court precedent. *See, e.g., United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973) ("It is the *fact* of the lawful arrest which establishes the authority to search . . . ." (emphasis added)). On the other hand, the majority's reading of *Knowles* requires the conclusion that the decision signified, *sub silentio,* a sea change in federal law.[4] *Cf. supra* Part I.

---

4. It has been six years since *Knowles* was decided, and no subsequent case has invested the *Knowles* holding with the meaning suggested by the majority.

In the present case, we must address a question not addressed in *Knowles*. The facts establish that an arrest occurred, not that a citation was issued. The question formulated by those facts is whether an arrest that occurs in violation of state law also violates the Fourth Amendment to the United States Constitution, triggering the exclusionary rule.

We answered this question in the negative in *Penn*. In *Penn*, this Court considered whether to exclude evidence obtained by a police officer incident to an arrest that violated Code § 19.2–81, a statute granting police the authority to arrest for misdemeanors only when committed in their presence. *Penn*, 13 Va.App. at 401, 412 S.E.2d at 190. We determined that the police officer's arrest of the defendant violated Code § 19.2–81 because the crime did not take place in the police officer's presence. *Id.* at 402, 412 S.E.2d at 190. We affirmed the conviction, however, reasoning that, although the arresting police officer was not in the presence of the defendant when the crime was committed, the officer had probable cause to believe that a crime had been committed because he was informed of the crime by another police officer. *Id.* at 408, 412 S.E.2d at 194. Because the officer had probable cause to believe the defendant committed a crime, we held that his arrest did not violate the Fourth Amendment and that the evidence obtained incident to the arrest could not be suppressed. *Id.*

Although this case arose under a different statute, Code § 19.2–74 rather than Code § 19.2–81, I perceive no principled distinction than can be made which would compel a result different from that reached in *Penn*. Indeed, nothing in Virginia case law interpreting Code § 19.2–74 requires a different result. To the extent the majority relies on Virginia cases to reach a different result, the reliance is misplaced; none of the cases cited involved a full custodial arrest of the defendant in violation of Code § 19.2–74, the circumstances presented here. In *Lovelace v. Commonwealth*, 258 Va. 588, 522 S.E.2d 856 (1999), the defendant was not placed under custodial arrest. *Id.* at 592, 522 S.E.2d at 857. The Court thus rejected "the Commonwealth's argument that the existence of probable

cause to charge Lovelace with drinking an alcoholic beverage in public allowed Womack to search him." [5] *Id.* at 596, 522 S.E.2d at 860. In *West v. Commonwealth,* 36 Va.App. 237, 549 S.E.2d 605 (2001), a search conducted immediately after the officer was "filling out the summonses" and before an arrest could be effected was not justified by the search incident to arrest exception. *Id.* at 240–42, 549 S.E.2d at 606–07. Finally, in *Rhodes v. Commonwealth,* 29 Va.App. 641, 513 S.E.2d 904 (1999) (*en banc*), we held that the search incident to arrest exception could not apply where the defendant was searched during a "non-custodial detention." *Id.* at 645, 513 S.E.2d at 906.[6]

Because Moore's arrest was based on probable cause, I am compelled to conclude that his Fourth Amendment rights were not violated. In the absence of a violation of Moore's Fourth Amendment rights, the federal exclusionary rule cannot apply, and neither the statute nor Virginia case law provides for an exclusionary rule.[7] Accordingly, I would vote to affirm Moore's conviction.

---

5. In rejecting the Commonwealth's argument, the Supreme Court implicitly rejected the reasoning of our panel decision in *Lovelace,* which held that "[t]he Constitution does not require a full custodial arrest to permit a complete search of the arrestee" where probable cause to arrest exists. *Lovelace v. Commonwealth,* 27 Va.App. 575, 585, 500 S.E.2d 267, 272 (1998); *see also Rhodes v. Commonwealth,* 29 Va.App. 641, 643 n. 1, 513 S.E.2d 904, 905 n. 1 (1999) (*en banc*) (noting that our panel decision in *"Lovelace* is no longer a viable precedent").

6. Despite the fact that Rhodes was not arrested, we commented in footnote 6 of the opinion that an arrest in violation of Code § 19.2–74 would be unconstitutional and, thus, would require exclusion. *Rhodes,* 29 Va.App. at 645 n. 6, 513 S.E.2d at 907 n. 6. However, this statement was unnecessary to the decision and, as such, is dicta. In any event, the statement appears to be wrong in light of long-standing precedent from the United States Supreme Court, federal circuit courts of appeal, and Virginia courts, cited *supra.*

7. In this regard, I find the Virginia Supreme Court's recent holding affirming this Court's decision in *Hunt v. Commonwealth,* 42 Va.App. 537, 592 S.E.2d 789 (2004) (*en banc*) (affirming the defendant's conviction "without opinion"), to be instructive. In a memorandum, the Court noted the following:

> Assuming, without deciding, that a violation of Code § 19.2–74 occurred, the defendant failed to establish that he was entitled to

suppression of the evidence obtained as a result of that search. *In the absence of a violation of defendant's constitutional rights, the remedy of exclusion of evidence is not available for a statutory violation.*

*Hunt,* slip. op. at 1 (emphasis added). To the extent the majority opinion interprets the Supreme Court's opinion in *Lovelace* as standing for the proposition that a search incident to an arrest that violates Code § 19.2–74 is constitutionally impermissible, the Supreme Court's order in *Hunt* stating that exclusion does not follow after such an illegal arrest indicates that *Lovelace* cannot be so interpreted.