Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ.,
and Koontz, S.J.[*]

CHARLES E. REED, III                    OPINION BY
                                SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No. 091803                    March 4, 2011

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

In this appeal, we consider whether the circuit court
properly denied a motion to vacate the convictions in a criminal
case on the ground that the judgment was void ab initio because
the foreman of the grand jury did not sign the indictments under
which the defendant was subsequently tried, convicted, and
sentenced.

BACKGROUND

The relevant facts are not in dispute. On October 4, 2004,
the grand jury of the Circuit Court of Stafford County was
presented with eight written charges against Charles Edward Reed,
III arising from the robbery and murder of Robert Douglas Lee.
Each was styled as a "Grand Jury Indictment" or as a "Direct Grand
Jury Indictment," and it is not disputed that each charge was made

_____

[*] Justice Koontz presided and participated in the hearing and
decision of this case prior to the effective date of his
retirement on February 1, 2011; Justice Kinser was sworn in as
Chief Justice on February 1, 2011.

with requisite specificity to inform Reed of the nature and character of the accusations against him. Each of the indictments had a check mark in the space provided indicating that the grand jury had found it to be "A True Bill." However, none of the indictments were signed by the foreman of the grand jury in the space provided for the foreman's signature.

On the same day that the grand jury considered the indictments against Reed, the Commonwealth requested that the trial court issue a capias for Reed's arrest.[1] The order directing that the capias be issued recited that Reed "was this day indicted for eight (8) felonies," listed each offense by description and Code section, and further stated that "[i]t appear[ed] to the Court that [these] direct indictments were handed down by the Grand Jury this day." Reed's court appointed attorney was present at the hearing at which the capias was issued. The record does not reflect that Reed's counsel raised any objection concerning the form of the indictments described in the capias.

Reed, with his counsel present, was subsequently arraigned in the trial court on November 1, 2004 and entered pleas of not

---

[1] There were ultimately three separate proceedings in the Circuit Court of Stafford County relating to Reed's convictions under these indictments – the original trial, a petition for a writ of habeas corpus to review the convictions, and the motion to vacate the convictions. For clarity, we will refer to these proceedings respectively as occurring in the "trial court," the "habeas court," and the "circuit court."

guilty to all the charges against him.  Again, Reed's counsel did not raise any objection to the form of the indictments on which Reed was being arraigned.

A jury trial was held on April 20, 2005.  At the outset of the trial, Reed entered guilty pleas to three of the charges that were not directly related to the robbery and murder of Lee, and which would have permitted the Commonwealth to prove at trial that Reed had a prior felony record and was in possession of illegal drugs.  The trial proceeded on the remaining five charges, and the jury convicted Reed on all five.  Following preparation of a pre-sentence report, the trial court conducted a sentencing hearing on June 16, 2005.  By an order dated June 19, 2005, the court sentenced Reed to life imprisonment for the murder of Lee, thirty-eight years imprisonment on the remaining charges, and fines totaling $200,000.  The record again reflects that no objection was raised to the form of the indictments under which Reed had been tried during either the trial or the sentencing hearing.

Reed filed a petition for appeal in the Court of Appeals, which refused Reed's appeal in a per curiam order.  Reed v. Commonwealth, Record No. 1535-05-4 (March 7, 2006).  The order refusing Reed's appeal reflects that Reed did not raise the issue of the validity of the indictments under which he had been tried in his petition for appeal.  Id.  Thereafter, a three-judge panel of the Court refused Reed's appeal for the reasons stated in the

3

per curiam order.  Reed v. Commonwealth, Record No. 1535-05-4 (June 9, 2006).  Reed's further appeal to this Court was also refused.  Reed v. Commonwealth, Record No. 061375 (November 27, 2006).  Reed's convictions became final on March 19, 2007, when the Supreme Court of the United States refused Reed's petition for a writ of certiorari.  Reed v. Virginia, 549 U.S. 1290 (2007).

Reed then filed a petition for writ of habeas corpus in the habeas court.  Among the claims made therein, Reed alleged that his trial counsel had been ineffective in that "he did not verify the authenticity of the indictments, which were not signed by the grand jury foreman."  In a separate claim, Reed further contended that his counsel should have "assert[ed] the prosecution was void" because of the defect in the indictments.   In an order dated February 27, 2008, the habeas court dismissed Reed's petition, finding that the failure of the jury foreman to sign the indictments was only a "technical omission[]" and "not a fatal defect."  The court further opined that if counsel had objected to the absence of the foreman's signature on the indictments, "the [trial] court would have addressed the issue, but the indictments would not have been found void."  The court further found that Reed "was arraigned on the charges, knew the crimes he was charged with, and was not hindered in any way in preparing his defense." Thus, the court concluded that Reed's counsel could not "be found

4

ineffective for not attacking the indictments because he had no viable grounds for doing so."

Reed noted an appeal from the judgment of the habeas court to this Court. The Clerk of this Court received the record of the habeas proceeding on March 24, 2008. On July 31, 2008, the Clerk returned the habeas record to the Clerk of the Circuit Court of Stafford County "[b]ecause no petition for appeal has been filed and the time allowed by law within which to do so has expired."

On July 23, 2009, Reed filed a motion in the circuit court to vacate his convictions on the ground that the indictments under which he had been tried were defective, contending that the failure of the jury foreman to sign the indictments rendered them a nullity. Reed contended that because a judgment based upon a nullity was void ab initio, it could be attacked in any court at any time, directly or collaterally.

In response to Reed's motion, and without requiring an answer from the Commonwealth, the circuit court entered an order dated August 5, 2009 denying the motion. The court concluded that endorsement of the indictment by the grand jury foreman was not a substantive part of the indictment. The court further found that as "the indictment[s] herein [were] returned in open court . . . the signature of the foreman [was] unnecessary." We awarded Reed this appeal.

5

## DISCUSSION

As was noted during oral argument of this appeal, Reed did not assign error to the circuit court's factual finding that the indictments at issue were "returned in open court." Accordingly, the issues presented in this appeal are limited to the questions of law as to whether the documents under which Reed was tried were in fact "indictments" and, even if they were, whether they were nonetheless so defective as to have deprived Reed of his due process right to a fair trial. We review these issues de novo. Hernandez v. Commonwealth, 281 Va. 222, 224, ___ S.E.2d ___, ___ (2011).

Reed first contends that the documents under which he was tried were not "indictments" because they were not signed by the foreman of the grand jury as required by this Court's Rule 3A:6(d). Reed notes that in a civil context, this Court has repeatedly held that a pleading that is not signed by the person with proper authority to do so is a nullity. See Aguilera v. Christian, 280 Va. 486, 489, 699 S.E.2d 517, 519 (2010); Shipe v. Hunter, 280 Va. 480, 484-85, 699 S.E.2d 519, 521-22 (2010); Kone v. Wilson, 272 Va. 59, 62-63, 630 S.E.2d 744, 745-46 (2006); Nerri v. Adu-Gyamfi, 270 Va. 28, 31, 613 S.E.2d 429, 430 (2005); Wellmore Coal Corp. v. Harman Mining Corp., 264 Va. 279, 283, 568 S.E.2d 671, 673 (2002). Reed contends that the same rationale should apply to indictments. He maintains that since the only

6

person authorized to sign an indictment is the grand jury foreman, the indictments in this case are nullities and not indictments at all.

Citing Johnston Memorial Hospital v. Bazemore, 277 Va. 308, 314, 672 S.E.2d 858, 861 (2009), Reed asserts that "[i]f an action is a nullity, regardless of the reason it is such, then no legal proceeding is pending" and the purported action is of "no legal effect."  Thus, he contends that the convictions and sentences imposed upon him are void because the "indictments" against him were nullities and there was no other valid charging instrument under which he could have been tried.  See Code § 19.2-217 ("no person shall be put upon trial for any felony, unless an indictment or presentment shall have first been found or made by a grand jury in a court of competent jurisdiction").

The Commonwealth responds that the failure of the grand jury foreman to sign the indictments was a defect in form only.  See Hobby v. United States, 468 U.S. 339, 345 (1984) (foreman's duty to sign indictment is "a formality," and the absence of his signature "is a mere technical irregularity that is not necessarily fatal to the indictment"); Frisbie v. United States, 157 U.S. 160, 164 (1895) (although "advisable" that indictment be endorsed by foreman, absence of signature is defect in form rather than in substantive charge).  Accordingly, the Commonwealth contends that when the indictments were returned by the grand jury in open court,

7

as the circuit court found was done in this case, this defect in form was cured, and the indictments became valid instruments under which to try Reed.  We agree with the Commonwealth.

This Court has previously held that "[a] written charge preferred by the [Commonwealth's] attorney to the grand jury, is not, when handed to them, an indictment, nor does it become so till sanctioned by them, which sanction is indicated by the . . . endorsement" of the foreman that the charge is a true bill.  Price v. Commonwealth, 62 Va. (21 Gratt.) 846, 860 (1872).  Accordingly, there can be no doubt that a written charge reciting events that constitute a criminal offense, citing the statute or ordinance that defines that offense, alleging that a particular person committed the offense so described, and indicating that a grand jury has found probable cause to support this charge such that the accusation is "a true bill," but which has not been signed by the foreman of the grand jury that has made this finding, is defective on its face.  If this were all that the record showed in a particular case about the written charge under which a defendant is tried and convicted, then it is not an "indictment," and cannot serve as the basis for the criminal prosecution of the accused. However, as this Court went on to explain in Price, we do not view the written charge in isolation from other aspects of the grand jury's proceedings.

8

In *Price*, the record in the appeal of a conviction upon a charge of horse theft contained a document stating the nature of the charge, but which was neither signed by the grand jury foreman nor endorsed by him as a true bill. Id. at 861-62. It was presumed that the document in the record was a copy prepared by the clerk from the original and that the clerk must have omitted the true bill endorsement and fact of the foreman's signature, believing that these elements of the indictment were no part of the charge against Price. Id. at 862. However, this Court held that whether the foreman "in fact endorsed . . . the indictment or not" was "an immaterial question, as the indictment was presented by the grand jury in open court as a true bill, and the finding was entered of record." Id. Thus, this Court concluded that it was the receipt of the charging instrument from the grand jury in open court, and not any precise form of that document, that was the essential requirement for a written charge to become an "indictment."

In *White v. Commonwealth*, 70 Va. (29 Gratt.) 824, 828 (1878), applying *Price*, this Court further explained that "it is not necessary that a bill, in order to be made a good indictment, should have on it an endorsement by the grand jury, or its foreman, that it is a true bill. It is sufficient that the bill was actually found to be a true bill by the grand jury; that such finding was announced in court by the clerk on the return, and

9

with the acquiescence, of the grand jury, and entered of record."

Thus, this Court concluded that the fact that there is "no endorsement on the indictment of any finding by the [grand] jury would not have made the [subsequent] judgment [founded on that indictment] erroneous" if the indictment was presented in open court.  Id. at 829 (emphasis omitted).

The principles set out in these cases, deriving from cases even more ancient and extending back to the English common law upon which our grand jury system is founded, have been applied in many subsequent cases.  See, e.g. Hall v. Commonwealth, 143 Va. 554, 561, 130 S.E. 416, 418 (1925); Crump v. Commonwealth, 98 Va. 833, 835, 23 S.E. 760, 760 (1895); Simmons v. Commonwealth, 89 Va. 156, 159, 15 S.E. 386, 387 (1892).  Price, White, and their progeny illustrate the general rule that where the record of a criminal conviction contains a document with a written charge, whether the original or a copy thereof, that has been presented to a grand jury and found by it to be a true bill, the prosecution for the offense described in the document will not be void because of any error in the form of the indictment so long as the record shows that the document was returned in open court by the grand jury in the normal course of its proceedings.

Simmons is particularly instructive of this rule.  In that case, the record contained a written charge against Simmons for murder "which was endorsed 'a true bill,' and signed by the

foreman of the grand jury." Simmons, 89 Va. at 156, 15 S.E. at 387. The record further showed that when Simmons was arrested, he was arraigned upon a charge of murder, and subsequently was tried and convicted on that charge, all of which was reflected in the order book by the clerk. Id. at 156-57, 15 S.E. at 387. However, the record did not show whether the written charge that had been endorsed a true bill and signed by the foreman also had been "delivered in court by the grand jury, and its finding recorded." Id. at 157, 15 S.E. at 387. Accordingly, this Court held:

> This omission is a fatal defect. No man can be tried for a felony in the courts of this [C]ommonwealth except upon an indictment of a grand jury; and the indictment, to be valid, must be presented in open court, and the fact recorded. Until this is done the accused is not indicted.

Id. (emphasis omitted).

In other words, even where a written charge materially in the form required by Code § 19.2-220 has been considered by a grand jury, endorsed as a true bill, and signed by the foreman, it only becomes a valid indictment when it is "presented in open court, and the fact recorded." Likewise, if the written charge is merely defective in form rather than substance, it nonetheless becomes a valid indictment for purposes of having the accused brought before the court to be tried on the charge when it is returned in open court by the grand jury and that occurrence is recorded in the record.

11

Accordingly, we hold that the circuit court did not err in ruling that Reed was tried under valid indictments. Although the written charges did not contain the signature of the grand jury foreman, they had been "returned in open court" by the grand jury as true bills and, thus, became valid indictments permitting the trial court to order the arrest of Reed and bring him to trial on those indictments.

Reed next contends that even if the indictments were otherwise valid instruments for bringing him to trial, they nonetheless were fatally defective under Code § 19.2-227, which provides that a judgment in a criminal case may be set aside where the indictment under which the defendant was tried is "so defective as to be in violation of the Constitution." The indictments in this case were constitutionally infirm, Reed contends, because Code § 19.2-226 provides for ten express defects in an indictment that will not result in the indictment being vitiated, and the absence of the foreman's signature from the indictment is not among them. Relying on the maxim expressio unis est exclusio alterius, Reed contends that as the General Assembly did not include the absence of the foreman's signature on the indictment as a non-fatal defect in Code § 19.2-226, we must conclude that an indictment that lacks the signature of the only person authorized to attest to its validity is "so defective as to be in violation of the Constitution" under Code § 19.2-227. We disagree.

The purpose of Code § 19.2-226 and its predecessor statutes is to "dispens[e] with the necessity of formal allegations in an indictment" when the defect complained of is only in form.  Lazier v. Commonwealth, 51 Va. (10 Gratt.) 708, 711 (1853).  The enumerated defects that will not render an indictment ineffective under the statute are not, however, as Reed contends, exclusive and complete.  Id.  Moreover, Code § 19.2-226 is addressed to efforts to quash or have an indictment deemed invalid, while Code § 19.2-227 applies to efforts to having a judgment "arrested or reversed upon any exception or objection made after a verdict." In other words, the former statute is addressed to direct attacks on an indictment before, or perhaps during, trial, while the latter is addressed to collateral attacks after the court or jury has returned a verdict of conviction under the indictment.  As Code § 19.2-227 makes clear, once a verdict has been entered on an indictment, it will be set aside only if the indictment is "so defective as to be in violation of the Constitution."

The function of an indictment is to give an accused notice of the nature and character of the accusations against him so that he can prepare an adequate defense.  See, e.g., Rawls v. Commonwealth, 272 Va. 334, 346, 634 S.E.2d 697, 702 (2006); Wilder v. Commonwealth, 217 Va. 145, 147, 225 S.E.2d 411, 413 (1976).  In order for an indictment to be "so defective as to be in violation of the Constitution" so that a final judgment in a criminal case

13

will be declared void, the defect must have deprived the defendant of the ability to defend against the charge, thus depriving him of due process as required by the Sixth and Fourteenth Amendments. See, e.g., Allen v. Lee, 366 F.3d 319, 324 (4th Cir. 2004). But, "where there is enough on the face of the [indictment] to charge the defendant with the commission of an offense known to the law" the indictment will be sufficient to sustain the judgment rendered. Council v. Smyth, 201 Va. 135, 139, 109 S.E.2d 116, 119 (1959); cf. Code § 19.2-221 (providing for short form indictments for murder and manslaughter and that "any form of . . . indictment . . . which informs the accused of the nature and cause of the accusation against him shall be good").

Reed does not contend that the absence of the foreman's signature from the indictments somehow prevented him from understanding the nature and character of the charges against him or that this deficiency in form interfered with his ability to defend against those charges. To the contrary, the record from the trial court amply demonstrates that Reed was fully apprised of the charges against him, made a strategic decision to plead guilty to certain of the charges so that the jury would not be made aware that he was a convicted felon and in possession of drugs at the time of the murder, and mounted a vigorous defense to the charges on which he elected to go to trial.

14

Thus, we conclude that the absence of the foreman's signature from an indictment, although not specified in Code § 19.2-226 as an insubstantial defect in form, is nonetheless a defect in form only and does not render the indictment "so defective as to be in violation of the Constitution" under Code § 19.2-227.  Accordingly, we hold that Reed may not assert this defect in the form of the indictments under which he was tried and convicted as a basis for vacating those convictions.[2]

## CONCLUSION

For these reasons, we will affirm the judgment of the circuit court denying Reed's motion to vacate his convictions and sentences.

<u>Affirmed</u>.

---

[2] Because of our resolution of this appeal on the two issues addressed above, we need not address the Commonwealth's assertions of res judicata and collateral estoppel.

15